FIRST NATIONAL BANK OF LATROBE, BELOIT STATE BANK,
   AND NORTH GRANVILLE NATIONAL BANK, Appellants,
   v. A. S. GARRETSON, BELLE S. GARRETSON, HUBBARD &
   GERE, T. P. GERE, EMMA S. GERE, RENSSELAVER D.
   HUBBARD AND E. J. HIXON, S. P. HIXON, AND J. N.
   HIXON, AS EXECUTORS OF THE ESTATE OF G. C. HIXON,
   Deceased, Appellees.

**Corporations:** POWERS OF OFFICERS. Where the articles of incorpo-
   ration and the by-laws of a company organized to loan money and
   purchase mortgages and real and personal property make no pro-
   vision authorizing any particular officer or committee to pay debts
   or to accept satisfaction of debts, the secretary and treasurer have
   authority to agree to a transfer of real estate from a debtor of the
   company to one of its creditors as payment of the company's claim
   against the debtor, and a satisfaction of its debts to the creditor

WHO MAY COMPLAIN OF ULTRA VIRES.   A creditor of a person who transfers property to a corporation in payment of its claim cannot complain that the officer receiving the transfer was without authority.

General Assignment:   PREFERENCE.   A payment by an insolvent debtor of the claim of one of his creditors is not void as to the others, where it is not a part of the general assignment.

SAME.   An assignment with preferences cannot be attacked by one who is not a creditor of the assignor.

SAME.   Where a creditor accepts a conveyance of property from his debtor in good faith and in payment of a valid indebtedness, it is not rendered void by the fact that the debtor intended it as part of an assignment for the benefit of creditors.

ESTOPPEL BY FILING CLAIM.   The fact that a creditor of an insolvent company who has accepted a conveyance from a debtor of the company in satisfaction of its claim against the company, afterward filed his claim against the general assignee of the company, and withdrew it again, is not evidence that the transaction was fraudulent as to the creditors of the person making the conveyance, where there was uncertainty whether the conveyance was intended as a payment or merely to secure the indebtedness.

*Appeal from Woodbury District Court.*—HON. F. R. GAY-NOR, Judge.

THURSDAY, JANUARY 19, 1899.

SUITS in equity to set aside a conveyance of land by defendants A. S. Garretson and wife to defendant T. P. Gere, and a mortgage made by Gere upon the same property, for the sum of thirty thousand dollars to defendants Hixon. It is claimed that each of these instruments is fraudulent and void, because made to hinder, delay, and defraud plaintiffs, who are judgment creditors of Garretson, in the collection of their claims.   Further, it is alleged that the conveyance to Gere was without consideration, and was made for the benefit of Hubbard & Gere, to whom Garretson was under no obligation whatever; that the purpose and intent of all the parties was to secure or pay an alleged debt from a corporation known as the Union Loan & Trust Company, to Hubbard & Gere, and thus defraud the creditors of Garretson; and that the

mortgage to the Hixons was without consideration, fraudulent, and void. The trial court dismissed plaintiffs' petitions, and they appeal.—*Affirmed.*

*Taylor & Burgess* for appellants.

*Lewis & Beardsley* for appellees.

DEEMER, J.—Appellants are judgment creditors of A. S. Garretson, and are in such position as that they may question the conveyances which are attacked, provided they have established the fraud pleaded by them. It appears from the evidence that Garretson was one of the principal promoters of what was known as the "Railroad Syndicate." He was also vice-president and director of a corporation known as the "Union Loan & Trust Company." His brother-in-law, E. R. Smith, was secretary and treasurer of this last-named corporation. The so-called "Railroad Syndicate" failed April 25, 1893, and in its fall took down the Union Loan & Trust Company. At the time of the failure of the trust company, Garretson was indebted to it more than fifty-five thousand dollars, and the trust company owed Hubbard & Gere, a co-partnership, fifty-five thousand dollars. Gere, of the firm of Hubbard & Gere, was not a member of the syndicate, although he was more or less immediately associated with Garretson in some of his numerous business ventures. He was an incorporator and one of the stockholders in the Union Loan & Trust Company. Garretson, being advised of the financial difficulties of both these corporations, called on Smith, the secretary and treasurer of the trust company, for a list of the local creditors of that institution. This was furnished him on April 22, 1893, and it disclosed four or five local creditors, among them Hubbard & Gere. Garretson thereupon made an arrangement with Smith by which he was to convey the land in controversy (one thousand eight hundred acres) to Hubbard & Gere in payment of their claim against the trust company; and Smith was to credit the

account held by the trust company against Garretson with the sum of fifty-five thousand dollars. A deed of the land to T. P. Gere, but for the benefit of Hubbard & Gere, was accordingly executed, on the twenty-second day of April; but it was not delivered until about noon of the twenty-fifth day of that month. Neither Hubbard nor Gere knew of the making of the deed until the twenty-fourth of April, at which time Gere, while looking after the collection of his firm's claim against the trust company, went to the office of that company, and was informed by Smith of the arrangement he and Garretson had made for the payment of the Hubbard & Geru claim. On the twenty-fifth, Gere met Garretson, who confirmed Smith's statement, and delivered the deed. The trust company made an assignment for the benefit of its creditors on the 25th day of April, 1893. This assignment was made after the execution of the Gere deed, but it was recorded a few minutes before the deed was filed for record. Garretson was insolvent at the time he made the deed, although neither Hubbard nor Gere knew of that fact, and was so at the time this suit was commenced. On October 22, 1894, Gere, for the benefit of Hubbard & Gere, mortgaged the land covered by this deed to the Hixon estate, for the sum of thirty thou· sand dollars.

Appellants say in argument that they do not question the validity and priority of this mortgage, but admit its validity and priority in all respects. They further say that, as the Hixon mortgage left no equity in the land, their only recourse is a personal judgment against Hubbard & Gere for the amount of money they received upon the land from the Hixon estate. Their claim is that Hubbard & Gere hold this money in trust, and they base it upon the following propositions: *First,* that Smith had no authority to consent to or approve of the conveyance from Garretson to Gere; *second,* that the conveyance was made when the Union Trust Company and Garretson were both insolvent, and created an illegal preference in favor of Hubbard & Gere; *third,* that

as Garretson was insolvent, and Smith had no authority to accept such a conveyance, it was voluntary, and therefore void as to Garretson's creditors; *fourth,* that, as the conveyance was invalid, Hubbard & Gere became trustees of the land for the benefit of Garretson's creditors, and should account for everything they have received upon or from the property.

The evidence fails to show any actual fraud in the transaction. Indeed, we do not understand appellants' counsel to contend that actual fraud is proven. They do claim, however, that Smith, as secretary and treasurer of the loan and trust company had no authority, without the approval of the board of directors of that corporation to agree to the conveyance, and that, by reason of such fact, the transfer from Garretson to Gere was voluntary, and therefore fraudulent. Although Garretson was insolvent at the time he made the deed, still he had the right to settle or pay part of his indebtedness to the Union Loan & Trust Company, and that corporation had the same rights with reference to its creditors. Neither had the right to make an assignment with preferences. But, as Garretson made no assignment, his conveyance to Gere cannot be avoided, on the ground that it constituted a part of a general assignment, and was therefore void. The trust company did make an assignment; and should it be found that the deed was intended to operate in connection therewith, and give a preference to Hubbard & Gere, still appellants would have no cause for complaint, as they are not creditors of the Union Loan & Trust Company. But we do not think the conveyance to Gere is subject to attack upon this ground by any one, for the reason that we fail to find any evidence which would justify a conclusion that the instruments should be considered together, and treated as parts of a general assignment, void for preferences. It is well settled in this state that an insolvent corporation may make payment of its debts, or give property in security therefor, just as a natural person

may do, and it may prefer one of its creditors over another. *Garrett v. Plow Co.,* 70 Iowa, 697 ; *Buell v. Buckingham,* 16 Iowa, 284.

Now, there is no doubt that on April 22, 1893, Garretson was indebted to the trust company in the sum of at least ninety thousand dollars; and it is further shown without dispute that the trust company was indebted to Hubbard & Gere in the sum of fifty-five thousand dollars. By agreement of proper parties, an arrangement by which Garretson might discharge his indebtedness to the corporation by paying its debt to Hubbard & Gere was perfectly legitimate. That Smith, Garretson, and Gere did make such an arrangement is well established; and the first question is whether they had authority to do it, and the second is, if they had no such authority, may Garretson's creditors take advantage of it, in the absence of any complaint from the assignee or stockholders of the trust company? If the case stood alone upon the bald proposition of the right of a secretary and treasurer of a mercantile or trading corporation to accept a deed from one of its debtors in payment of his indebtedness to the corporation, we would have no hesitation in saying that he had no such power, in the absence of express authority; for it is a general rule that an agent for the collection of claims has no implied authority to accept anything but money. But this case presents an altogether different aspect. Here Garretson was indebted to the trust company, and the trust company was indebted to Hubbard & Gere. By an arrangement between Garretson and Smith, the secretary and treasurer, Garretson undertook to stand responsible to Hubbard & Gere for the amount of their claim against the company, with the understanding that he should have credit on his indebtedness to the company for the amount of the Hubbard & Gere claim. Hubbard & Gere had the undoubted right to take property in satisfaction of or as security for their claim, and the only question is, had Smith, the secretary and treasurer, power to agree to this novation?

The articles of incorporation state that the trust company "is organized for the purpose of loaning money on real-estate collateral, and other personal security, the purchase and sale of mortgages, * * * the purchase and sale of such real and personal property as shall be desirable for its own use and profit, or necessary for the collection or security of any debt or claims owing to the company, or in which it may have an interest." Further, it is provided that "the corporate powers shall be vested in a board of five directors, who shall be elected each year from among the stockholders of the association. * * * But the board may create an executive committee of not less than three, whose duties shall be defined by the by-laws." It is further provided that "the board shall elect a president, vice-president, secretary, and treasurer, who shall be from their own number * * * whose duties shall be defined in the by-laws." The by-laws provide, among other things, that the president shall preside at all meetings, and sign all such contracts and conveyances as may be required by the board of directors for the proper and necessary transaction of the business of the company, and that, in the absence of the president, the vice-president should perform his duties. The by-laws made it the duty of the secretary to attend to all correspondence, keep the records, sign all such contracts and conveyances as are signed by the president, and keep an accurate account of the same. He was also required to keep such books as the board might from time to time determine to be necessary to exhibit in detail all applications for loans, all loans negotiated, the purchase and transfer of negotiable securities, real estate, and all evidence of indebtedness issued by the company, which books should at all times be open to the inspection of the board. He was also required to make reports of the business as demanded, and make a full and accurate statement at the end of each year, and to perform such other duties as might be required of him by the company. The treasurer was to be the custodian of all the funds and evidences of indebtedness due the company or

intrusted to it by others.   He was also required to keep books and make reports.

Three committees were provided:   (1) An auditing committee; (2) a finance committee; and (3) a committee on applications for loans.   The first of these was to "audit and allow bills for the current expenses of the company, to which committee all such bills shall be referred."   The finance committee was to determine "what, and the extent of, the temporary investment of the funds of the company to be made from time to time aside from loans on real estate;" and the committee on applications for loans was to "investigate and decide upon the sufficiency of the security offered."   The secretary had power to cancel mortgages by indorsing on margin of records payments thereof, or by issuing satisfaction pieces.   It will be noticed that the auditing committee had nothing to do with any claims save those for current expenses, the finance committee had power to set aside funds of the company for making other loans than those on real estate, and the committee on applications simply decided upon the sufficiency of the security offered.   Power to pay indebtedness or to accept money or property in satisfaction of indebtedness due to the corporation was not lodged in any of these committees.   It was vested then either with the board of directors, or with the officers of the company; and, as the powers conferred upon these officers are not specifically defined, we must look at the law to determine the general powers of such officers.

Now, while the general rule no doubt is that a secretary is not ordinarily the fiscal agent of a corporation, and is not employed to bind it in transactions of a financial character, yet the business of the corporation and the nature of his office may be such as that he may perform many and important acts for his corporation.   The business of the loan and trust company was such that larger powers were necessarily implied in its secretary than if it had been organized to carry on some ordinary mercantile pursuit.   The duties of the secretary

were quite like those of a cashier in an ordinary banking institution.   Such an officer has power to pay checks, negotiate loans, discount paper, extend the time of payment of notes and bind his bank by various other acts.   See 2 Cook, Stock, Stockholders and Corporation Law, section 718.

We are of the opinion that, under the facts disclosed by this record, the secretary of the Union Loan & Trust Company had power to accept payment of obligations due his company, and that, as the corporation might accept real estate as payment, he also might do so, provided he did it in good faith.   We are also constrained to believe that he had power to pay the obligations of his company, except for current expenses, without submitting the same to the auditing committee.   In any event, he had the apparent right to do this; and if his company made no objection, but received the benefits thereof, no stranger can be heard to complain.   The evidence shows that the assignee of the corporation has ratified the transaction so far as in him lies, and that no one is complaining save the creditors of Garretson.   If Smith had authority to accept payment of Garretson's claim,—as we have no doubt he did,—then the disposition made of the property by the corporation or by its officers is a wholly immaterial matter, and we may grant, for the purposes of the case, that Smith had no authority to pay Hubbard & Gere's claim.   But, as we have already intimated, we do not think the fact that the secretary dealt with real estate is a controling feature in the case.   If he had authority to accept money, he had authority to deal with the land in the manner shown.   In so far as his company is concerned, he was dealing with money.   It is the same as if he had accepted fifty-five thousand dollars in money from Garretson, and turned it over to Hubbard & Gere.   Hubbard & Gere accepted the land as so much money, and no one has a right to complain because it was not money.   In the case of *Brown v. Weymuth,* 36 Me. 414, relied upon by appellants, the charter of the corporation limited the power of the treasurer to the payment of debts

ordered by the board of directors, and there was no evidence whatever of ratification. *Blood v. Marcuse,* 38 Cal. 590, was a case where the arrangement was made by the secretary, but it did not purport to be a corporate transaction, and no ratification was shown. Again, in each case the corporation was organized for trading purposes, and not to traffic in money and negotiable securities. Moreover, we do not think appellants are in position to question these transactions. If the corporation is content with them, certainly a stranger ought not to be allowed to complain. If it be conceded that the creditors of the trust company might object, still it does not follow that one holding a judgment against Garretson may take advantage of the secretary's want of authority. The corporation has had the benefit of the transaction, and has paid fifty-five thousand dollars of its indebtedness. Garretson has discharged that amount of his indebtedness to the company, and there is no equitable reason for holding Hubbard & Gere as trustees for the benefit of Garretson's creditors so long as the corporation seems to be content with the arrangement. *Beecher v. Rolling-Mill Co.,* 45 Mich. 105 (7 N. W. Rep. 695).

There is a dispute in the evidence as to the time when the entries showing the transactions between Garretson, the trust company, and Hubbard & Gere were entered upon the books of the company; that is, as to whether they were entered before or after the assignment. We do not regard this as a controlling factor, however, for the reason that our inquiry is as to what the transaction in fact was, rather than the character of the evidence to sustain it.

We have already referred to the fact that we do not think the deed to Gere should be treated as a part of the general assignment for the benefit of creditors, and therefore void as to creditors of the bank, and need only re-enforce that thought with the suggestion that the evidence clearly shows that Gere accepted the conveyance in good faith, and without knowledge that it was intended by the trust company as a part

of the transaction by which it assigned its property for the benefit of its creditors.   The case, in this respect, is like *Groetzinger v. Wyman,* 105 Iowa, 574, wherein it is held that if a mortgagee accepts his conveyance in good faith, to secure a valid indebtedness, the intention of the debtor to make a general assignment does not invalidate the instrument.

On August 10, 1893, Hubbard & Gere filed their claim with the assignee of the trust company; and Gere, in verifying the same, said that the company, at the time of its assignment, had fifty-five thousand dollars in its hands belonging to Hubbard & Gere, no part of which had been paid.   The claim was withdrawn after consultation between the attorney for Hubbard & Gere and the assignee.   It is now argued that this fact is evidence of fraud in the transaction, and of a reservation to Garretson of a secret trust in the property.   While this evidence, standing alone, might be considered evidence of fraud between Hubbard & Gere and the trust company, it does not of itself tend to show any fraudulent intent on the part of Garretson, and it is no evidence of any secret reservation in him.   While it may be a circumstance tending to disclose the true nature of the whole transaction, it is not sufficient in itself to defeat the conveyance.   It seems that the firm, or one of the members thereof, understood the transaction, so far as they were concerned, to be a mortgage; and Garretson himself is not clear whether he made the deed to them to secure the indebtedness which he had assumed, or as payment or part payment of the same.   This much is certain, however: the debt of Garretson to the Union Loan & Trust Company was extinguished to the extent of fifty-five thousand dollars, and the company's obligation to Hubbard & Gere was really extinguished, although Gere may have thought he took the deed as security.   The appellants are not in a position to complain in any event. The case is peculiar in some of its aspects, but we do not think appellants are equitably entitled to the money received by Hubbard & Gere through the mortgage upon the land they received from Garretson: and the decree is AFFIRMED.