JOSEPH QUINT *vs.* JAMES O'CONNELL.

Second Judicial District, Norwich, April Term, 1915.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GREENE, JS.

Authorizing an agent to sell liquor at retail does not necessarily and as matter of law clothe him with authority to buy liquor on the credit of his principal.

To render a principal liable upon the ground of the apparent or ostensible authority of the agent to make the contract in question, two important facts must be clearly established: the principal must have held the agent out to the public as possessing the requisite authority, and the person dealing with the agent and knowing the facts must have believed, in good faith and upon reasonable grounds, that the agent had the necessary authority.

An agent cannot enlarge his actual authority by his own acts or statements without some measure of assent or acquiescence by the principal.

Argued April 27th—decided June 10th, 1915.

ACTION to recover for merchandise alleged to have been sold to the defendant, brought to the Court of Common Pleas in New London County and tried to the jury before *Waller, J.;* verdict and judgment for the plaintiff for $130, and appeal by the defendant. *Error and new trial ordered.*

*Thomas M. Shields* and *William H. Shields, Jr.*, for the appellant (defendant).

*Edmund W. Perkins*, for the appellee (plaintiff).

RORABACK, J. The following facts were undisputed upon the trial: In the months of December, 1913, and January, 1914, one Stanley Leno, who was known as St. Leno, was in a saloon owned by the defendant in Norwich, Connecticut, as the defendant's agent with authority to sell liquors in this saloon. There was no evidence that Leno had express authority to buy supplies for this place on the defendant's credit. Upon two occasions during the months of December, 1913, and January, 1914, the agent for the plaintiff called at the defendant's saloon for the purpose of selling liquors. When the plaintiff's agent was in the defendant's saloon upon these different occasions Leno was in sole charge of it. O'Connell was not there. The license was then hanging from the wall of the saloon, made out to James O'Connell and transferred to O'Connell and Company. The goods in question were sold to Leno by the agent of the plaintiff on the days above stated. The articles were shipped from New Haven by the plaintiff and consigned to Leno, who later made a part payment for them. O'Connell knew nothing of these sales to Leno, of Leno's receipt of the goods, and part payment of Leno, until the latter part of February, 1914. At this time the plaintiff, having failed to collect the balance of the bill from Leno, called upon the defendant and demanded payment of the amount due for these liquors. This O'Connell refused to pay.

It appears that at the time these sales were made Leno was in possession of this saloon and selling its contents under a written agreement to purchase the same from the defendant. By the provisions of this

written agreement the authority of Leno was limited to making sales. It did not purport to authorize him to make purchases upon the credit of the defendant. The defendant never received any benefit from the sale of the goods and never ratified the purchase of them by Leno.

In addition to these undisputed facts the plaintiff claimed and offered evidence to show that his agent secured the order for the goods from Leno, who represented at the time that he bought the goods that he was agent of the defendant, and that the plaintiff sold the goods to Leno as manager of the saloon for O'Connell.

The defendant claimed that the evidence showed that the plaintiff, through his agent, sold the goods to Leno individually and on his own credit. The defendant also claimed that there was no evidence that O'Connell ever authorized Leno to make any purchases, and that there was no evidence to show that Leno ever bought any of the goods on the credit of the defendant.

The pleadings and evidence presented the question as to the authority of Leno to bind the defendant as his agent in purchasing the goods in question.

By the defendant's appeal we are asked to review the instructions of the court as to this aspect of the case.

In that portion of the charge in which this question was discussed, the jury were told: "The evidence in the case, gentlemen, shows beyond dispute that the contents of the saloon 152 West Main Street was the property of the defendant at the times of the sales alleged in the complaint. S. Leno, in November, 1913, and in January, 1914, at the times alleged in the complaint, was in charge of the saloon and at both times the license displayed in the saloon was made out to the defendant with a transfer noted on it to James O'Connell & Co. Those facts are before you undis-

puted. Under these undisputed facts, if the plaintiff's salesman Polasky had secured from Leno an order for goods, Leno representing at the time that he bought the goods as the agent of the defendant, and the plaintiff's employee Polasky selling the goods to him as such agent, under the circumstances in this case, gentlemen, the defendant would be liable in this action for the agreed value of the goods so sold and delivered. And this would be true without regard to any of the provisions contained in the papers in evidence before you relating to the sale of this particular saloon by the defendant to Leno." The jury were also instructed that "if the plaintiff has satisfied you . . . by the weight of the evidence that Leno was in sole charge of the saloon, and I think from the evidence that you gentlemen are almost bound to find that fact to be true, and that nothing was said to prevent the plaintiff's salesman, Polasky, from drawing the natural conclusion that Leno was managing the saloon for the defendant and that the defendant was the owner, then if you find those facts to be true, the plaintiff has established his case by showing an implied authority in Leno to make these purchases for the defendant."

In substance, the jury, by these instructions, were told that the facts recited therein, without the aid of extrinsic circumstances, constituted Leno a general agent possessing authority to purchase goods on the credit of the defendant. These instructions were incorrect and harmful.

In the absence of any trade usage or custom, the creation of an agency carries with it the authority, by proper means, of accomplishing its object, and clothes the agent with such authority as is proper and necessary to effectuate its purpose; but an authority to buy cannot be inferred from an authority to sell. The acts are distinct in their nature, and not dependent

upon or incidents of each other. Story on Agency (8th Ed.) §§ 88, 89; *Benjamin* v. *Benjamin*, 15 Conn. 347, 356; *Thames Steamboat Co.* v. *Housatonic Railroad Co.*, 24 Conn. 40, 51; *Kearns* v. *Nickse*, 80 Conn. 23, 25, 66 Atl. 779.

But the plaintiff contends that Leno had apparent and ostensible authority to bind the defendant by his contracts, and that the facts shown by the evidence were such as to estop the defendant from denying the existence of an agency. Apparent and ostensible authority is such authority as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe that the agent possesses. This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential to the application of the above general rule that two important facts be clearly established: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. "The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exer-

cising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent." 2 Corpus Juris, pp. 574, 575; 1 Parsons on Contracts (9th Ed.) pp. 44, 45; *Union Trust Co.* v. *McKeon*, 76 Conn. 508, 57 Atl. 109. By the terms of the written agreement between Leno and the defendant, Leno's authority was limited to sales, and this agency did not expressly authorize Leno to bind the defendant by purchases.

As we have already stated, the authority to make sales did not *per se* warrant Leno in buying goods upon the credit of the defendant. Leno could not enlarge his actual authority by his own acts or statements without some measure of assent or acquiescence by the defendant. Leno was in possession of the defendant's saloon with an authority to conduct the local business connected therewith. It is not claimed that Leno had ever exercised the right to make any purchases for O'Connell, except those now in question. It does not appear that there had ever been any other dealings between the plaintiff and defendant from which the plaintiff could infer that Leno had authority to purchase for the defendant. To hold, as matter of law, that an agent had an authority to make purchases, under the facts set forth in the instructions, would press too far the doctrine of apparent or ostensible authority. It follows from what we have said, that the charge bearing upon the subject of implied authority was erroneous.

There is error and a new trial is ordered.

In this opinion the other judges concurred.