An allegedly unstable and corrupt employee of the defendant is said to have converted three of the plaintiff's rugs; one, a valuable Oriental creation; the remaining two having been large broadloom rugs of lesser value and of general household utility. The determinative question appears to be whether this employee, at the date of the claimed conversion, was acting as an agent of the defendant or as an independent broker.
Late in July, 1943, the plaintiff, a woman of integrity, completed her first business transaction with the defendant, an apparently reputable dealer in furniture, rugs, and miscellaneous household supplies. This venture embraced the purchase of three utility heaters, which were delivered by the defendant to the plaintiff's home at Plymouth.
Thereafter, in September, 1943, the plaintiff, on the basis of her prior congenial dealing with the defendant and by reason of the defendant's public advertisements for used or second hand furniture and rugs, telephoned its business establishment to indicate a desire to dispose of three used rugs. Mrs. MacDermid says her preliminary conversation was with Mr. Sobel, the owner and active manager of the defendant, who, in turn, transferred the call to Mr. Cammher, a store employee and the claimed offender who ultimately converted the rugs. On the other hand, Mr. Sobel's secretary claims that when Mrs. MacDermid's telephone call was received, Mr. Sobol was away from the store and that Mrs. MacDermid was connected directly with Mr. Cammher.
Be that as it may, some fifteen minutes after the call had been completed, Mr. Cammher was in the plaintiff's home to examine the three rugs. He evinced great interest in the oriental rug, whereupon, with the plaintiff's permission, it was removed by Cammher on the pretext of having it cleaned and *Page 237 
readied for resale. In return for this rug, Cammher issued a receipt to Mrs. MacDermid in the following language:
"Sept. 29, 1943
 Received of Mrs. McDermid 1 9 x 12 Oriental Rose Rug for resale.
 W. Cammher 4-3022"
The notation "4-3022" was the telephone number of the defendant's store.
Approximately a week after this first visit, Mr. Cammher returned to the plaintiff to collect the remaining two rugs. No receipt was issued at the time of their removal from her home.
Some days thereafter, Mrs. MacDermid, on telephoning the defendant's store to deliver a message to Mr. Cammher, was told that he was no longer employed; that he had left the City of Waterbury; and that he had departed under a cloud by reason of his suspected embezzlement of the employer's money and merchandise.
The defendant now contends that while Cammher was its employee, he was merely a store clerk with his authority limited to sales in the store. It is argued that he was without authority to enter into negotiation for the purchase of the plaintiff's rugs; that he was without authority to accept merchandise for resale; and that in all his dealing with Mrs. MacDermid he was an independent operator who hoped to broker the rugs for his exclusive profit rather than for the financial gain of the defendant.
Although the defendant has pressed this theory with earnestness, nevertheless I am persuaded that Mr. Cammher was vested with sufficient apparent and ostensible authority so as to lead Mrs. MacDermid to believe that he was acting for the defendant principal. The basic law governing the situation was stated in Quint vs. O'Connell, 89 Conn. 353, 357, and reaffirmed in Fireman's Fund Ind. Co. vs. Longshore Beach Country Club, Inc., 127 id. 493, 496, to this effect: "Apparent and ostensible authority is such authority as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe that the agent possesses. This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows *Page 238 
third persons to act on an apparent agency. It is essential to the application of the above general rule that two important facts be clearly established: (1) that the principal held theagent out to the public as possessing sufficient authority to embracethe particular act in question .... and (2) that the persondealing with the agent knew of the facts and acting in goodfaith had reason to believe and did believe that the agent possessedthe necessary authority." (Italics added.)
Applying this standard to the present controversy, it cannot be doubted that Cammher was held out to the plaintiff, a member of the general public, as possessing sufficient authority to embrace the act of removing her rugs for resale. Mrs. MacDermid, in reply to public advertisements, telephoned the defendant's store and was put in touch with Mr. Cammher, to whom she explained her problem. Almost immediately thereafter, Mr. Cammher called at her home, introduced himself, and proceeded to an examination of the three rugs with the ultimate removal of the Oriental. Further, his receipt delivered to Mrs. MacDermid contained a notation of the defendant's telephone, clearly indicating to an unsuspecting woman that he was a direct representative of his store. Thereafter, his conduct in returning to gather the remaining two rugs gave further evidence of what was assumed to have been good faith and customary business practice.
The plaintiff's loss was occasioned by the affirmative acts of the defendant, including: (1) the employment of Cammher an untrustworthy servant, over a period of many months; (2) a failure, so far as the evidence discloses, to investigate Cammher's previous employment and general background with respect to his character and integrity; (3) a failure, so far as the evidence discloses, to bond Cammher for the faithful discharge of his employment; (4) permitting Cammher to be available for and accessible to important telephone messages from customers; (5) permitting Cammher to call on customers as the apparent agent of the defendant's establishment.
It is a matter of common knowledge and experience that housewives regularly telephone business firms requesting that representatives be sent into private homes to complete an infinite variety of transactions. In the absence of a customer's bad faith, not present in the instant matter, the public is entitled to rely on these representatives as having authority to complete necessary and legitimate transactions. If this rule is *Page 239 
harsh as claimed by the defendant, then it must be justified as an essential incident to the operation of business houses. Surely it would be exacting an unreasonable penalty of Mrs. MacDermid if she, having acted in good faith, were to be taxed with the loss of rugs appropriated by an unworthy and unreliable employee. She had every reason to believe, and did believe, that Cammher was an authorized agent of the defendant. The loss must be borne by the principal, whose inattention, or neglect, or affirmative acts set in motion the circumstances leading to the unfortunate result.
Apart from the problem of responsibility for the occurrence, the application of a fair rule of damage has presented a measure of difficulty. The Oriental rug was purchased by Mrs. MacDermid in 1928 at a cost of $850; the so-called green broadloom rug was purchased by her in 1938 at a cost of $240; and the so-called red broadloom rug was purchased in 1938 at a figure of $225.
I am satisfied that the rugs, while in use by Mrs. MacDermid, were given excellent care and attention. Economically, she was able to afford maid service, which, in turn, resulted in regular and careful house cleaning. Thus, I am convinced that the rugs had not deteriorated to any appreciable degree, save for ordinary wear and use.
Barker vs. Lewis Storage Transfer Co., 78 Conn. 198, is authority for the proposition that the amount recoverable for the conversion of household goods and effects, owned and kept for personal use, is not to be restricted to the price which could be realized from the sale of such articles in the market; the owner should be allowed to recover their value to him based on the actual money loss which, in view of all the circumstances and conditions, results from his being deprived of his property.
In addition to the cost price of the rugs, there is before me Mrs. MacDermid's evidence of their value at the time of their conversion. It is her opinion that the oriental rug had increased in value over and above its cost price by reason of age, careful use, scarcity of comparable merchandise, and a general rising market. Likewise, it is her opinion that both broadloom rugs had an enhanced value, in 1943, by reason of the rising market. Unfortunately, I have not been given any professional guidance on the subject, since no rug expert or dealer had *Page 240 
examined the rugs, prior to conversion, with a view to their fair appraisal.
However, the matter is not in the realm of conjecture or speculation, since there is sufficient basis upon which to predicate a fair award in compliance with the rule of Barker vs.Lewis Storage Transfer Co., supra. Mrs. MacDermid's opinion evidence is helpful but not necessarily conclusive. It is to be weighed in view of all the circumstances. Carangelovs. Nutmeg Farms, Inc., 115 Conn. 457; Taft vs. Valley OilCo., Inc., 126 id. 154.
The plaintiff, on an occasion, expressed her willingness to sell one of the broadloom rugs for $150. Since both broadloom rugs were of substantially comparable age and size, and since both had been subjected to comparable use, it is my judgment that this figure provides a basis for fair reimbursement for actual money loss.
With respect to the oriental rug, I do not share Mrs. MacDermid's opinion that its value had been enhanced through the passage of time. However, as has been indicated, it was a choice, expensive, carefully used, and well preserved household article; subject, nonetheless, to some degree of depreciation.
Accordingly, the following items are allowed: Chinese Oriental rug, $700; Green broadloom rug, $150; Red broadloom rug, $150.
 Judgment may enter for the plaintiff to recover of the defendant $1,000 and taxable costs.