CHEM-TRONIX LABORATORIES, INC. *v.* THE SOLOCAST
COMPANY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 1-668-23849

Argued April 15—decided July 26, 1968

*Joseph J. Rinaldi,* of Stamford, for the appellant (defendant).

*Paul D. Plotnick,* of Stamford, for the appellee (plaintiff).

KOSICKI, J.    The plaintiff, a manufacturer-assembler of printed circuit boards, sued the defendant for the reasonable value of services rendered and materials furnished in connection with the improvement of a product of the defendant known as a solocaster.   The defendant is engaged in the sales, development and marketing of various electrical devices, including the solocaster, which is a portable phonograph used primarily for sight-seeing tours. The court rendered a judgment for the plaintiff from which the defendant appealed.

The court made its finding pursuant to Practice Book § 980.   The defendant filed no motion to correct the finding but did file the transcript of evidence in accordance with Practice Book § 981.   In its assignment  of errors, the defendant claims that the court erred in refusing to find certain material facts set forth in the draft finding "which were admitted or undisputed." It is obvious that such error cannot be claimed when the court was afforded no opportunity to correct its finding.   See Practice Book, Form 819 (B) (2).   A fact is not admitted or undisputed merely because it is uncontradicted. *Mercier* v. *American Refractories & Crucible Corporation,* 151 Conn. 559, 560.   Upon our examination of the evidence, we find that even if the correct procedure had been followed, the court was not in error by not including the claimed facts.   There was ample evidence to sustain the court's finding of facts, and it must stand.

The finding discloses the following: The defendant, since 1963, has been engaged in selling specially

produced recorded communications, among which was a portable phonograph called a solocaster. This device was used primarily for sight-seeing tours but could be adapted for educational and other similar purposes. In the spring of 1966, William Chiello, chief engineer for the defendant company, communicated to his superiors that he felt that the plaintiff should be engaged to study and improve the function of the so-called solocaster recording unit owned by the defendant, as it had certain shortcomings and weaknesses which the defendant believed could be rectified. It was the aim of the defendant to enlarge and expand the use of this instrument. William Chiello, in his capacity as chief engineer of the defendant, had actual and apparent authority to hire the plaintiff, which was engaged in electronic research and development work. Chiello had belief and confidence that the solocaster had certain shortcomings or weaknesses which could be corrected and also that the plaintiff's engineers could overcome these problems and expand the solocaster's capabilities. The defendant's officers gave its engineer authority to deal with the plaintiff's engineers for this purpose.

In the spring of 1966, the solocaster was not in production. It was at this time that the chief engineer contacted the plaintiff with regard to the possible development of a unit, which would fit in with the solocaster, called a twincaster, a sort of stereo version of their existing product. The plaintiff was engaged by the defendant in accordance with a discussion between themselves, and, as a result, the plaintiff obtained several solocaster units and began to work on them. The plaintiff's engineers and the defendant's officers met and conferred about the solocaster. After the plaintiff had expressed its opinion and confidence to the defendant's officers that it could improve the solocaster, it was allowed

and permitted to pursue its work of improvement and redesigning. An implied contractual relationship developed between the plaintiff and the defendant. As a result, the plaintiff's engineers redesigned the audio amplifier portion of the unit, the acoustical portions of the unit related to the loudspeaker, and made recommendations for the battery power as related to the overall motor control and the speed of the instrument. The plaintiff also prepared a complete engineer's report on the solocaster and was instructed to make enough copies in order that one be available to the Scovill Manufacturing Company, which, according to the defendant's representatives, had exclusive manufacturing rights.

During the work of the plaintiff, the defendant's chief engineer, president, and chairman of the board were in close communication with the plaintiff and attended some of the plaintiff's working hours at the plaintiff's laboratory. The plaintiff did in fact improve the performance of the solocaster unit. Money for materials was expended by the plaintiff. Three hundred hours were devoted to the experimentation, redesign and projected improvement of the solocaster. During the trial, the parties stipulated that item 2, the project mute study performed by the plaintiff, obligated the defendant to the extent of $100. The plaintiff relied on the authority of the defendant's engineer and its high policy and operation officers to engage the plaintiff in this activity, which was for the apparent benefit of the defendant's business. No evidence was introduced at the outset as to what compensation the plaintiff was to receive for its services. No terms were expressed concerning what the rate or the amount of payment was to be for the services to be rendered. The defendant failed to establish that the plaintiff rendered the service with the understanding that it was done without obligation or cost to the defendant and

that the instrument produced would be subject to approval of the Scovill Manufacturing Company.

The circumstances which developed concerning the work done on the solocaster were not preceded by any communication to the plaintiff that no agent of the defendant had any authority to enter into any financial obligation beyond $100 because of this limitation as fixed by the rules and bylaws of the defendant. The plaintiff was not told of any limitation on the defendant's powers to engage in contracts. In the early meetings between the parties, no evidence or testimony was offered that the defendant could not engage the plaintiff's skills. Later, the defendant informed the plaintiff that Scovill would have to approve the suggestions and changes, but nothing was said concerning compensation or reward for the plaintiff's undertaking. No reasons were shown why the Scovill Manufacturing Company decided not to produce or proceed with its plan to put the solocaster units into production. The work performed by the plaintiff was for the benefit of the defendant, and the work and services were reasonably worth $1857.62.

On the foregoing facts, the court reached the following conclusions: (1) There was an implied promise to compensate the plaintiff in some manner or in specific dollars; (2) the defendant benefited from the services rendered by the plaintiff; (3) the material and services rendered by the plaintiff to the defendant were reasonably worth $1857.62 plus the $100 which was stipulated for item 2; (4) this undertaking by the plaintiff was not for speculation.

The issues involved in the appeal, as stated in its brief by the defendant, are (1) whether the evidence supports the finding that William Chiello had actual and apparent authority to hire the plaintiff; (2)

whether the evidence supports the finding that Chiello had the right financially to obligate the defendant; and (3) whether the court erred in finding for the plaintiff in quantum meruit when the complaint alleged an express contract.

We need not consider the lengthy argument of the defendant that the bylaws of the corporation did not permit any officer, other than the president, to incur an expense in excess of $200 without the approval of the board of directors. There is nothing in the evidence that this limitation on expenditures (if it existed—for the evidence of bylaws came in only by way of hearsay, and the bylaws were not produced in evidence) was a fact or that the plaintiff had any knowledge of it or of any circumstances which would lead the plaintiff to a reasonable belief that it would not be paid.

The original complaint was based on an express contract; that was amended by the addition of a second count which claimed the same relief, either under an implied contract or for the reasonable value of services rendered to the defendant. The court found, on adequate evidence, that, under the circumstances which existed between the parties, a business relationship was created between them and that the plaintiff was entitled to the reasonable belief that it was to be compensated for the work and materials furnished.

"It is hardly necessary to state that an express agreement may be either written or oral. The word 'express' is used in contradistinction to the word 'implied.' 'Express' (contrary to the claim of defendants' counsel) has nothing to do with whether a contract is oral or written." *New York Bakery, Inc.* v. *Downtown Bakery, Inc.*, 19 Conn. Sup. 388, 390. Whether a contract actually existed is a conclusion of law to be derived from all the facts and circum-

stances surrounding the transaction. *New Haven Tile & Floor Covering Co.* v. *Roman,* 137 Conn. 462, 464. It was decided by the trial court that the plaintiff was entitled to recover on an implied contract performed by the plaintiff or on a quasi contract predicated on unjust enrichment. See *Gustave Fischer Co.* v. *Morrison,* 137 Conn. 399, 403. In the cited case, recovery was denied because the plaintiff relied on the supposed authority of the defendant's agent, whereas the plaintiff had been given prior warning of the denial of such authority by the defendant.

"A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. Such contract arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services. In such a case, the law implies from the circumstances, a promise by the defendant to pay the plaintiff what those services are reasonably worth." *Collins* v. *Lewis,* 111 Conn. 299, 304; see such cases as *Misisco* v. *LaMaita,* 150 Conn. 680, 684; *Bartlett* v. *Raidart,* 107 Conn. 691, 694–96. The criterion is not whether there is an undisclosed intention of the defendant not to pay, but whether the plaintiff reasonably expects to be compensated. Under quite similar circumstances, where the plaintiff furnished services and materials to the defendant in the remodeling of a restaurant for the benefit of a third party, the court stated: "The question in such a case is not whether the defendant in fact expected to pay for the services but whether they were rendered under such circumstances that the defendant either knew, or, as a reasonable man, should have known, that the plaintiff expected com-

pensation. The contract between the defendant and Farb [the third party], of which the plaintiff knew nothing, had no bearing upon the issue involved." *Butler* v. *Solomon,* 127 Conn. 613, 616; see *Theron Ford Co.* v. *Dudley,* 104 Conn. 519, 523.

Among other errors assigned by the defendant is the refusal of the court to add to its finding certain claimed facts which are alleged to be admitted or undisputed. These relate to the lack of authority on the part of Chiello to bind the defendant; the lack of authorization from the board of directors, which alone could obligate the defendant because the amount involved exceeded the limit to which individuals acting for the defendant were subject; and, finally, the question whether whatever contract or obligation existed to improve the solocaster was conditioned on the approval of the Scovill Manufacturing Company.

The court found, in effect, that there was no disclosure to the plaintiff by the defendant of any of the internal operations or limitations imposed on the defendant by its bylaws or otherwise, and that the terms of whatever contract existed between the defendant and Scovill were unknown to the plaintiff. The plaintiff acted on the apparent or ostensible authority of the defendant and under the circumstances had the right to assume that the defendant's agents and officers, in doing what they did, in connection with the improvement of the defendant's product, were acting with authority from and for the benefit of the defendant. "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. *Quint* v. *O'Connell,* 89 Conn. 353, 357 . . . . To fix the principal's liability for the agent's act, it must be shown either that the principal, by his own acts,

causes the mistaken belief that the agent had the requisite authority or that the principal knowingly permitted the agent to engender that belief. Ibid. Also, of course, the third party must have acted in good faith on the false appearance created by the principal. Ibid." *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 665. Here the court expressly found, on substantial evidence, that the plaintiff, at the request of the defendants' engineers and officers, had expended considerable time and effort to perfect a device which the defendant expected to market, that the result was satisfactory, and that the defendant refused to pay. The refusal, for whatever reason, by Scovill did not excuse the defendant. Scovill was not a party to this action. It had no dealings with the plaintiff. "[I]t was quite immaterial, so far as the plaintiff was concerned, what promises, if any, were made or understandings reached between the defendants . . . [and the third party]." *Theron Ford Co.* v. *Dudley*, supra.

We need not consider the remaining numbered paragraphs of the draft finding, referred to in paragraph 2 of the assignment of errors, because they are mainly conclusions drawn from the evidence and are not supported by the court's finding, and, from the evidence, they were not admitted or undisputed facts.

There remains only paragraph 7 of the assignment of errors, which may require comment. In this assignment the defendant claims that the court erred in allowing recovery in quantum meruit when, the defendant argues, the action was in contract. The defendant has apparently overlooked the second count, entitled "Amended Complaint," which we have already discussed above. Our law and practice permit such joinder where the parties are the same and the causes of action arose out of the same trans-

action or fall within certain classifications. General Statutes § 52-97 (1), (7); Practice Book §§ 86(1) (7), 88; Stephenson, Conn. Civil Proc. §§ 67, 68. We may add that there is nothing in the record to show that any objection had been taken to the pleadings or to the course of the proceedings thereon. Claims of law which have not been raised in the trial court may not, for the first time, be presented to this court for review. *Bigionti* v. *Argraves,* 152 Conn. 700, 701.

There is no error.

In this opinion JACOBS and WISE, Js., concurred.