HOLLYWYLE ASSOCIATION, INC. *v.* ELSIE F. HOLLISTER ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued December 5, 1972—decided March 7, 1973

*Robert N. Talarico,* for the appellant (named defendant).

*Lloyd Cutsumpas,* with whom, on the brief, was *Francis J. Collins,* for the appellants (defendant Coxeter et al.).

*William W. Sullivan,* for the appellee (plaintiff).

SHAPIRO, J. The plaintiff, a domestic nonstock corporation, instituted this suit for equitable relief, seeking an injunction to restrain the defendants George W. Coxeter and David A. Werner from using or interfering with the roads of Hollywyle Park in the town of New Fairfield. In addition, it sought an order declaring void a conveyance by which the defendants claimed a right of way across the plaintiff's roads. The referee, acting as the court, found the issues for the plaintiff and rendered the decrees requested. The defendants have appealed.

The unchallenged finding reveals the following facts: The named defendant, Elsie F. Hollister, is the former owner and developer of a tract known as Hollywyle Park, located in the town of New Fairfield. After subdividing the property, she retained ownership of several lots in that tract and sold the remaining lots to individuals, some of whom subsequently formed the plaintiff corporation. In April, 1953, she conveyed title to the roads of Hollywyle Park to the plaintiff in settlement of a lawsuit which had been brought against her by some of the residents of the tract. This conveyance, a quitclaim deed, provided that the plaintiff would assume ownership and maintenance of the roads; it contained no reservation of rights to the grantor, Elsie F. Hollister, for the purpose of access to a contiguous parcel which she owned.

At the time the roads of Hollywyle Park were conveyed to the plaintiff, the named defendant's adjacent land was inaccessible except by passing through Hollywyle Park, Section 1. On one side the land is bounded by a lake, on another side by Holly-

wyle Park, Section 1, and on the two other sides by property owners not involved in this suit.[1] A road in the land connects with roads of Hollywyle Park, Section 1, to reach a public highway.

There is no indication that the plaintiff raised any objection to the named defendant's use of the roads of Hollywyle Park to gain access to the otherwise landlocked parcel so long as she retained ownership thereof. By virtue of an agreement recorded in 1930, reciting certain covenants, easements, restrictions and reservations inuring to the benefit of and binding on all owners of lots, title to any land in Hollywyle Park, Section 1, which forms part of any street or road was made subject to a permanent easement, running with the land, for the use thereof for highway purposes by all other owners of plots. Thus, inasmuch as the named defendant continues to own lots in Hollywyle Park, Section 1, no question has arisen in this appeal respecting her right to use, in relation to those lots, the roads which she conveyed to the plaintiff in 1953.

On April 29, 1966, the named defendant conveyed to the defendants Coxeter and Werner her contiguous land together with a right of way through the roads of Hollywyle Park. The grantees' attorney, who had searched the title to the premises, had discovered the 1953 deed by which the roads of Hollywyle Park were conveyed to the plaintiff. He, therefore, requested that the named defendant obtain, prior to the time of closing, an instrument reconveying road rights to herself, to be passed on in turn to the grantees. On February 21, 1966, the named defendant procured the instrument from her niece,

---

[1] We point out that while the land is bounded on one side by Candlewood Lake, the finding shows that the only access to the defendants' land is over the roads of Hollywyle Park, Section 1.

Muriel Hollister, who was secretary of Hollywyle Association, Inc. This instrument purported to convey the right to the named defendant, her heirs and assigns, to pass and repass over the roads of Hollywyle Park for the purpose of gaining access to the contiguous parcel of land. It was signed by Muriel Hollister in her capacity as secretary of the plaintiff corporation and contained in the acknowledgment provision a recital that she was duly authorized. The instrument was recorded on May 31, 1966, together with the named defendant's conveyance to Coxeter and Werner. Although the instrument was executed by the plaintiff's secretary, Muriel Hollister was not in fact authorized to execute any type of real estate conveyance. None of the corporate bylaws empowered the secretary to execute such an instrument, and no meeting of the plaintiff corporation had been called so to authorize her. The deed bore neither the corporate seal nor a recital that the board of directors had empowered her so to act.

On these findings, the court concluded that the purported conveyance, dated February 21, 1966, of the right of way over the plaintiff's roads worked a fraud and an inequity on the plaintiff and that it should be declared void. It further concluded that the defendants Coxeter and Werner were neither bona fide purchasers nor in a position to rely on the purported conveyance, because they knew prior to purchasing that the named defendant had quitclaimed the roads of Hollywyle Park to the plaintiff without reservation. In view of the fact that the instrument evidencing a right of way over the plaintiff's roads was procured at their behest, the court found them derelict in failing to require actual proof that Muriel Hollister, the plaintiff's secretary, had authority to make the conveyance.

## I

The defendants press essentially two claims on appeal. The first claim which we consider raises the contention that the defendants Coxeter and Werner took title free and clear of the plaintiff's claim that the deed to the named defendant was not authorized. They make no suggestion that the purported deed giving the named defendant a right of way was ratified by the plaintiff, nor is there any claim that the plaintiff should be barred from disclaiming the deed on the ground of estoppel. The defendants do not challenge the finding that Muriel Hollister, acting as the plaintiff's secretary, had no actual authority to convey an interest in the plaintiff's real estate. They argue, however, that unless a subsequent purchaser can rely on a deed signed by the secretary of a corporation, that purchaser will face an insurmountable burden; he will no longer be entitled to trust the system of recordation of land titles but must at his peril investigate any corporate deed appearing in the chain of title.

The specter thus created by the defendants vanishes in light of a distinction which we cannot overlook. Here, there is no question of reliance placed on the land records by one who is a stranger to a spurious conveyance. From an examination of the land records the defendants Coxeter and Werner were apprised that the named defendant, their prospective grantor, had quitclaimed her interest in the roads of Hollywyle Park. They insisted that she reacquire a right of way by deed or other instrument in order that she might reconvey road rights to them. Finally, the purported deed from the plaintiff was recorded contemporaneously with the conveyance of the contiguous parcel, so that it did

not appear in the land records until after the defendants Coxeter and Werner had purchased their parcel from the named defendant. Whatever equities may accrue to an innocent purchaser who relies on the recordation of deeds cannot avail the defendants Coxeter and Werner. Rather than induce mistaken reliance, the land records alerted them to the risks of purchase. Compare, for example, *Interstate Iron & Steel Co.* v. *East Chicago,* 187 Ind. 506, 509, 118 N.E. 958.

Apart from equitable considerations, the defendants contend that the deed should nevertheless be accorded validity for the reason that the plaintiff's secretary was clothed with apparent authority.[2] The issue of apparent authority is one of fact to be determined on two criteria: first, on the conduct of the principal in holding out his agent as having sufficient authority to include the action in question; and second, on the reasonable belief of a party

---

[2] In the absence of actual authorization from the board of directors, the office of secretary ordinarily does not carry with it inherent power to act for the corporation. See 2 Fletcher, Cyclopedia Corporations (Perm. Ed.) §§ 636, 642, and cases cited. General Statutes §§ 33-313 and 33-447 reserve such power to the board of directors unless the certificate of incorporation otherwise provides. See, in this connection, *California Winemakers' Corporation* v. *Sciaroni,* 139 Cal. 277, 72 P. 990 (secretary has no implied authority to transfer property); *Chicago* v. *Stein,* 252 Ill. 409, 96 N.E. 886 (secretary without power to bind corporation by letters or documents officially signed by him); 19 Am. Jur. 2d, Corporations, §§ 1172, 1175, 1179; but see *First National Bank* v. *Garretson,* 107 Iowa 196, 77 N.W. 856 (nature of savings and loan corporation was such as to allocate heavier responsibilities to secretary); *Rothman & Schneider, Inc.* v. *Beckerman,* 2 N.Y.2d 493, 141 N.E.2d 610 (secretary shown to be one actually managing corporation's affairs).

Although our statutes empower corporations to hold and to transfer property; General Statutes §§ 33-291, 33-428; they do not affect the scope of officers' authority, nor can they be taken as absolute power to encumber at the pleasure of corporate officers. See 6 Thompson, Real Property § 2978 (repl. 1962).

acting in good faith. *Cohen* v. *Holloways', Inc.,* 158 Conn. 395, 407–8, 260 A.2d 573; *Nowak* v. *Capitol Motors, Inc.,* 158 Conn. 65, 69, 255 A.2d 845; see also *Baptist* v. *Shanen,* 145 Conn. 605, 608, 145 A.2d 592; Cross, Corporation Law in Connecticut, pp. 280–86 (1972). In *Washington Cedar & Fir Products Co.* v. *Elliott,* 91 Conn. 350, 353, 100 A. 29, the rule is explained as follows: "Whether or not a principal is bound by the acts of his agent, when dealing with a third person who does not know the extent of his authority, depends, not so much on the actual authority given or intended to be given by the principal, as upon the question, what did such third person, dealing with the agent, believe and have a right to believe as to the agent's authority, from the acts of the principal . . . . The apparent authority of the agent which thus binds the principal, beyond that actually conferred, must always be deduced from authorized acts of the agent, and from surrounding facts with a knowledge of which the principal is chargeable, and not from the acts of the agent himself in excess of his authority and of which the principal had no notice." The question before the trier, therefore, was whether the plaintiff had, by its conduct, interpreted in light of the surrounding circumstances known to it, caused the mistaken belief that Muriel Hollister had the requisite authority to convey a right of way over its roads or whether the plaintiff knowingly permitted its agent to engender that belief. See *Lewis* v. *Michigan Millers Mutual Ins. Co.,* 154 Conn. 660, 665, 228 A.2d 803; *Quint* v. *O'Connell,* 89 Conn. 353, 357, 94 A. 288.

In the case before the court, however, the defendants offered no evidence as to any conduct on the part of the plaintiff corporation, either for the

purpose of showing that the plaintiff customarily allowed Muriel Hollister to act as its agent in similar transactions or that the plaintiff knowingly led the defendants to believe that its secretary possessed authority to act in its behalf. Compare, for example, *Cohen* v. *Holloways', Inc.*, supra, 407; *Nowak* v. *Capitol Motors, Inc.*, supra, 69–70. In view of the duty of inquiry placed on a party dealing with a known agent to ascertain whether that agent is acting within the scope of his authority; *Adams* v. *Herald Publishing Co.*, 82 Conn. 448, 451, 74 A. 755, *Credit Co.* v. *Howe Machine Co.*, 54 Conn. 357, 388, 8 A. 472; the defendants' failure to secure more than the recitation that Muriel Hollister was the secretary of the plaintiff corporation hardly improves their position. The fact that the subscribing officer bore the same name as the grantee and that this transaction involved the plaintiff's real property should, as a practical matter, support a third party's reasonable, good faith belief. See Kempin, "The Corporate Officer and the Law of Agency," 44 Va. L. Rev. 1273, 1285.

Absent a showing that any acts or conduct on the part of the plaintiff corporation caused or allowed the defendants to believe that the secretary's act was duly authorized; *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra; the claim based on apparent authority cannot succeed. See *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, 127 Conn. 493, 496–97, 18 A.2d 347.[3]

---

[3] We note that the legislature has codified protection in favor of third parties who rely on the apparent authority of the board of directors, where the power of the board has been unusually limited; General Statutes §§ 33-313 (b), 33-447 (b); but there is no suggestion that the transaction in question comes within the purview of these statutes.

## II

The second claim which the defendants advance is that, regardless of the effect of the purported deed, the named defendant had an easement by necessity over the roads of Hollywyle Park, so that on her conveyance of the contiguous parcel to Coxeter and Werner this right of way was passed on to them as appurtenant to the land. See *Marshall* v. *Martin,* 107 Conn. 32, 35, 139 A. 348. The defendants are correct in their contention that omissions in the deed will not negate the existence of a right of way by necessity; *Pierce* v. *Selleck,* 18 Conn. 321, 328, *Collins* v. *Prentice,* 15 Conn. 39, 43; nor will the invalidity of the deed necessarily affect its existence. *Oliver* v. *Ernul,* 277 N.C. 591, 178 S.E.2d 393; 3 Powell, Real Property ¶ 410; compare *Chappell* v. *New York, N.H. & H.R. Co.,* 62 Conn. 195, 203, 24 A. 997.

The law respecting easements by necessity was set forth in *Collins* v. *Prentice,* supra. In that case the plaintiff brought an action of trespass against the defendant, who claimed to have no access to his parcel except over the plaintiff's land. The court recited the common-law rule, established for over two centuries, respecting easements by necessity: "[T]he law will not presume, that it was the intention of the parties, that . . . [the grantor] should so convey a portion as to deprive himself of the enjoyment of the remainder." Id., 44. Whether arising from presumption of intent or from the necessity of the party claiming it; *Pierce* v. *Selleck,* supra, 329; an easement by necessity will be imposed where a conveyance by the grantor leaves the grantee with a parcel inaccessible save over the lands of the grantor, or where the grantor retains

an adjoining parcel which he can reach only through the lands conveyed to the grantee. *Collins* v. *Prentice,* supra, 44. The requirement of unity of ownership is a strict one; *Leonard* v. *Bailwitz,* 148 Conn. 8, 11, 166 A.2d 451, *Robinson* v. *Clapp,* 65 Conn. 365, 384–85, 32 A. 939, *Woodworth* v. *Raymond,* 51 Conn. 70, 76–77; but to fulfill the element of necessity, the law may be satisfied with less than the absolute need of the party claiming the right of way. The necessity need only be a reasonable one. See *Marshall* v. *Martin,* supra, 37; *Robinson* v. *Clapp,* supra, 387; *Myers* v. *Dunn,* 49 Conn. 71, 77; cf. *Pierce* v. *Selleck,* supra, 328.

In the case before us, the parties do not dispute the fact that the named defendant was the common grantor both of the plaintiff's property, being the roads in Hollywyle Park, and of the contiguous land now belonging to the defendants Coxeter and Werner. Moreover, the plaintiff has no quarrel with the finding of the court that the adjacent land is inaccessible save by passage through Section 1 of Hollywyle Park. The necessity of a right of way across the plaintiff's roads is absolute in terms of passage by land to and from the public highway. The court, however, agreed with the plaintiff's contention that the named defendant's quitclaim conveyance of the roads in 1953 was deliberately made without reservation so as to settle pending litigation and that her purposeful relinquishment of any rights in the premises destroys the basis for any claimed easement by necessity.

The conclusion that a deliberate omission on the part of the named defendant to reserve a right of way precludes any claim for an easement by necessity cannot stand. First, even though the named defendant's deed to the plaintiff purported to con-

vey all and any interest she may have had in the roads, this deed did not operate to destroy her rights to their use as a lot owner in Hollywyle Park. Second, even where a deed gives warranties against encumbrances, this will not prevent a court from imposing a right of way by necessity.[4] *Robinson* v. *Clapp,* supra, 385, approving *Buss* v. *Dyer,* 125 Mass. 291. The presumption as to the intent of the parties is a fiction of law, as the court recognized long ago in *Robinson* v. *Clapp,* supra, and merely disguises the public policy that no land should be left inaccessible or incapable of being put to profitable use. See *Myers* v. *Dunn,* supra; 3 Powell, Real Property ¶ 410; 2 Thompson, Real Property §§ 362–374 (repl. 1961); Simonton, "Ways by Necessity," 25 Colum. L. Rev. 571, 572–74.

In cases of extreme necessity, the presence of a right of way for a special purpose has not pre-

---

[4] Contemporary authorities and most courts recognize that it is unadulterated fiction to attribute all easements by necessity to an implied intent of the parties. See 3 Powell, Real Property ¶ 410, p. 443; 2 Thompson, Real Property § 362 (repl. 1961); Simonton, "Ways by Necessity," 25 Colum. L. Rev. 571, 572–74; see also 3 Tiffany, Real Property § 793, p. 287 (recognizing the limits of the fiction). As Simonton, supra, explains, early cases such as *Collins* v. *Prentice,* 15 Conn. 39, 43, fictionalized the intent of the parties to reach a desired result because prevailing jurisprudence tended toward fixation on contract and contractual analogies. Our early decisions such as *Collins* v. *Prentice,* supra; *Myers* v. *Dunn,* 49 Conn. 71; *Chappell* v. *New York, N.H. & H.R. Co.,* 62 Conn. 195, 24 A. 997; and *Marshall* v. *Martin,* 107 Conn. 32, 139 A. 348, can be understood in light of this trend and by their reliance on the "contractually-fixated" authorities of their time like Washburn on Easements, cited in the *Chappell* case, supra, 204, and Jones on Easements, cited in *Marshall* v. *Martin,* supra, 37. In fact, Simonton traces the origin of the rule concerning easements by necessity as far back as the fourteenth century; cases recognizing public interest as the moving force behind the rule appear as early as the seventeenth century. *Packer* v. *Welsted,* 2 Sid. 39, 111, 82 Eng. Rep. 1244, 1284 (1658).

cluded the imposition of an additional "unlimited way of necessity for all legal uses" in favor of a grantee across the lands of his grantor. *Myers* v. *Dunn*, supra, 78. That a statute empowers selectmen of a town to lay out private ways does not abolish or infringe the common-law right to an easement by necessity. *Collins* v. *Prentice*, 15 Conn. 39, 45. On the other hand, however, it is a fallacy to suppose that a right of way by necessity is a permanent way, attached to the land itself. *Pierce* v. *Selleck*, 18 Conn. 321, 329. Thus, whether a deed explicitly conveys the right, as in *Pierce* v. *Selleck*, or fails expressly to convey it, as in *Chappell* v. *New York, N.H. & H.R. Co.*, 62 Conn. 195, 203, 24 A. 997, the right will arise as a result of objective necessity rather than as a result of the deeds or omissions of the parties.

It is self-evident that the imposition of an easement by necessity impairs the dominion of the servient estate owner over his own soil. Hence, although the court concluded that the creation of a right of way over the plaintiff's roads would work an inequity on the plaintiff, this conclusion merely acknowledges the unavoidable consequences of easements by necessity. This court, however, is not blind to the countervailing interests of property owners in the plaintiff's position. For that reason, the element of necessity has been rather strictly construed and made to depend on the situation of both parties, the nature and adaptability of the property, and surrounding circumstances. *Robinson* v. *Clapp*, 65 Conn. 365, 387, 32 A. 939.

We conclude that the judgment rendered was erroneous and that the defendants Coxeter and Werner do have a right of way by necessity for access to their land adjoining Hollywyle Park, Sec-

tion 1. The record before us on this appeal is not sufficient for a determination as to the precise location, limit and route of such a right of way by necessity or any equitable consideration which should be given in connection with the use and burden of maintenance of such a right.

While we find no error in that portion of the judgment declaring that the deed to the defendant Elsie F. Hollister, dated February 21, 1966, granting the right to pass and repass over the roads of Hollywyle Park, Section 1, is null and void and that the defendants George W. Coxeter and David A. Werner have no rights thereby, there is error in the portion of the judgment granting injunctive relief.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion HOUSE, C. J., MACDONALD and BOGDANSKI, Js., concurred; LOISELLE, J., concurred in the result.