[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION SUPERIOR COURT
The plaintiff had his boat delivered to the defendant to have its two engines rebuilt. He was given an estimated cost of $12,000.00 by an employee of the defendant for the job which, it was understood, would be sent to another contractor. He also was given an estimated time of completion of two-to-three weeks. The job took two months and cost nearly twice as much as the estimate. The plaintiff has brought this action for breach of contract. He also claims that the defendant charged his credit card without authorization.
This was a half-day bench trial in which the only witnesses were the plaintiff and the defendant's principal, Christopher Cestaro. The court finds the following facts. The plaintiff is a CT Page 11646 middle-aged business man who has owned pleasure boats for nearly thirty years. He is familiar with the boating industry, having bought and sold about six boats for over twenty years. He also has considerable experience dealing with boat repair shops.
In 1994, the plaintiff purchased a 1992 forty foot Skater performance boat for $175,000.00, without engines. The first engines used on this boat came from another vessel owned by the plaintiff. Those engines were later traded for newly re-built engines which were installed at a cost of $7,600.00 each. Seeking higher speed and greater operational hours and engine longevity, the plaintiff purchased two experimental high performance engines in Florida at a cost of $40,000.00 each. Cestaro advised the plaintiff against purchasing these engines.
The plaintiff was dissatisfied with the engines and asked the defendant to rebuild them. The defendant is in the business of boat and engine repairs. The plaintiff was a good customer, paying the defendant approximately $40,000.00 per year for work on his boats.
The defendant transported the plaintiff's vessel to its premises on or about July 6, 1996. At the defendant's shop, the plaintiff spoke with two of the defendant's workers, Kevin Care and Daryl Azagerian (phon.). Because the defendant was not capable of doing the work on these particular engines, the plaintiff was advised that the defendant would remove the engines and transport them to another contractor, Hawk Motors, to perform the work. The defendant would then re-install the rebuilt engines.
The plaintiff elicited a written estimate from Care on a pre-printed service order form. Other than the date, the plaintiff's personal information and the kind and size of the boat, the only handwriting on the document states:
Estimate
Rebuild Two 700ci Alm
Motor Complete $12,000.00
Buddy from Hawk said Two to Three weeks
(Emphasis in original). The document was unsigned and was never CT Page 11647 seen by Cestaro prior to the commencement of this lawsuit.[1]
The job took two months to complete rather than two or three weeks. This delay occurred exclusively while the boat was with Hawk. The boat was not returned until September, 1996. The work did not cost $12,000.00 but $23,966.70. This was exclusively due to increased charges by Hawk; there was no mark-up by the defendant. Even before the final bill was presented, however, the plaintiff, without protest, made two interim payments to the defendant totalling $15,000.00 — three thousand dollars more than Care's estimate. The plaintiff seeks damages for the difference between the $12,000.00 estimate and the final bill.
In paragraph 3 of his complaint, the plaintiff alleges that the defendant "agreed to repair the plaintiff's boat engines for a complete cost of $12,000.00." The defendant denied this allegation. At trial it was evident that the defendant maintained that Care was not authorized to enter into a contract with the plaintiff and that the $12,000.00 was not a fixed price. The plaintiff's ostensible claim[2] is that if Care did not have actual authority, he had apparent authority to enter into a contract with him. Moreover, the plaintiff apparently claims that the $12,000.00 either was a fixed price or the defendant was obligated to call him when it become known that the actual cost of the job would exceed the estimate. The court agrees with the defendant.
 I
First, the court finds credible Cestaro's testimony that Care was not actually authorized to give written estimates or to enter into contracts. This was the plaintiff's burden to prove. GeneralProducts Co. v. Bezzini, 33 Conn. Sup. 654, 657, 365 A.2d 843
(App. Sess. 1976)
Second, Care did not have implied authority to so act. "Implied authority is actual authority circumstantially proved. It is the authority which the principal intended his agent to possess. . . . Implied authority is a fact to be proven by deductions or inferences from the manifestations of consent of the principal and from the acts of the principal and [the] agent. . . . (Citations omitted; internal quotation marks omitted.)Connecticut National Bank v. Giacomi, 242 Conn. 17, 70,699 A.2d 101 (1997). There was no evidence that Care was employed by the defendant other than as a mechanic and boat worker. No other CT Page 11648 facts that would give rise to implied authority were proven.
Neither did the plaintiff prove that Care had apparent authority to enter into a binding contract with him. "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses.' Lewis v. MichiganMillers Mutual Ins. Co., 154 Conn. 660, 665, 228 A.2d 803 (1967), citing Quint v. O'Connell, 89 Conn. 353, 357, 94 A. 228 (1915) Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal. Nowakv. Capitol Motors, Inc., 158 Conn. 65, 69, 255 A.2d 845 (1969). The issue of apparent authority is one of fact to be determined based on two criteria. Hollywyle Assn., Inc. v. Hollister,164 Conn. 389, 396, 324 A.2d 247 (1973); Quint v. O'Connell, supra. First, it must appear from the principal's conduct that "the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority.' Nowak v. Capitol Motors,Inc., supra; Quint v. O'Connell, supra. Second, the party dealing with the agent must have, "acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority' to bind the principal to the agent's action.Nowak v. Capitol Motors, Inc., supra; Quint v. O'Connell, supra."Tomlinson v. Board of Education, 226 Conn. 704, 734-35,629 A.2d 333 (1993)
The plaintiff has not established anything that the defendant did "through his own acts or inadvertences" which would cause or allow the plaintiff to believe that Care, a mechanic and boat worker, could bind the defendant by contract. There is no credible evidence that the defendant held out Care as possessing such authority or knowingly permitted him to act as having such authority. See, e.g., Hollywyle Assn., Inc. v. Hollister, supra,164 Conn. 396-97.
In addition, the plaintiff did not act reasonably if, indeed, he acted in good faith.[3] He knew from prior experience with the defendant that bona fide estimates were written up in far greater detail on different forms, which he had signed in the recent past. Under circumstances such as these, the law places a "duty of inquiry on a party dealing with a known agent to ascertain whether that agent is acting within the scope of his authority . . ." Hollywyle Assn., Inc. v. Hollister, supra,164 Conn. 397. CT Page 11649
 II
The court also finds that it was not intended that the "estimate" be a binding contract. "Whether the parties intended legally to bind themselves prior to the execution of a formal contract is to be determined from (1) the language used, (2) the circumstances surrounding the transaction, and (3) the purpose that they sought to accomplish." Weiss v. Fowler,15 Conn. App. 690, 693, 546 A.2d 321, cert. denied, 209 Conn. 814,550 A.2d 1082 (1988); see also Wellington Systems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 161, 714 A.2d 21, cert. denied,247 Conn. 905, 720 A.2d 516 (1998). First, the language used was "estimate." In a contract "the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. Pesino v.Atlantic Bank of New York, 244 Conn. 85, 92, 709 A.2d 540 (1998). An "estimate" is "a rough or approximate calculation." Webster's Ninth New Collegiate Dictionary (1991); see Middlesex CountySewerage Authority v. Borough of Middlesex, 74 N.J. Super. 571,181 A.2d 818, 825-26 (1962). The purposes surrounding the transaction also indicate that there was no fixed price. To ascertain the extent of the work, Care and Azagerian would have to have dismantled the engines and examine the extent of the work to be done. They did not do so. It was clear to the plaintiff that another entity would be doing the engine work. The plaintiff also knew that Care and Azagerian were workers, that Cestaro was the defendant's principal in a business that had only eleven employees, and that more detailed contracts in far greater detail, signed by him, had been required in the past. Finally, with respect to the purpose the parties sought to accomplish, the court is abundantly convinced that a fixed price was not important to the plaintiff, lie wanted the engines overhauled on this vessel, on which he already had spent nearly a quarter of a million dollars. He wanted to use his boat that summer and price was not of the essence. There was no agreement that the plaintiff would be consulted should the actual cost of the work exceed the estimate and, indeed, the plaintiff paid the defendant $3,000.00 more than the estimated price well before the work was completed and the full and actual cost of the job was known. The plaintiff knew that the $12,000.00 figure was an approximation which could be changed as the scope of the work on this complex engine rebuilding project was better known. Cf. DeCarlo and Doll, Inc.v. Dilozir, 45 Conn. App. 633, 640-41, 698 A.2d 638 (1997);Middlesex County Sewerage Authority v. Borough of Middlesex,
CT Page 11650 supra, 181 A.2d 825-26.
Finally, the plaintiff's claim that the defendant charged his credit card without his authorization was not proven by a fair preponderance of the evidence.
 III
The defendant has asserted a counterclaim for other repairs to the plaintiff's boat at the plaintiff's request, the reasonable value of which is $1,258.44. Cestaro so testified, credibly, and the plaintiff did not provide controverting evidence.
Judgment may enter for the defendant on the complaint. Judgment may enter for the plaintiff on the fourth count of the counterclaim. Judgment may enter for the defendant in the amount of $1,258.44 on the third count of the counterclaim.[4]
BY THE COURT
Bruce L. Levin Judge of the Superior Court