THOMAS B. WOODWORTH vs. THEODORE RAYMOND.

A way of necessity is not created by mere necessity, but always grows out of some grant, or change of ownership by operation of law, to which it is attached by construction as a necessary incident.

A way of necessity can not exist where neither the party claiming it, nor the owner of the land over which it is claimed, nor the parties under whom one or both of them claim, were ever seized at the same time

of the two tracts, in favor of one and over the other of which the way is claimed.

Where the members of the Mohegan tribe of Indians owned as joint tenants a certain farm, and some of them owned in severalty certain adjoining lands which they conveyed, it was held that the latter could not by their conveyance create a way of necessity in favor of the grantees over the farm.

The tribe held the farm under certain laws of the state which forbade their selling it. Held that there could not be a prescriptive right of way over it; since a prescription presumed a grant and could not exist where there was no power to grant.

[Argued June 1st—decided July 3d, 1883.]

ACTION for the obstruction of a right of way; brought to the Court of Common Pleas of New London County, and tried to the court on a general denial before *Mather, J.* The following facts were found by the court:—

On the 23d of July, 1835, Ralph Hurlbut, Lydia Wyyongs, Parthenia Hoscott and Cynthia Hoscott, in compliance with and in conformity to a resolution of the General Assembly, passed at its May session, 1835, conveyed by warranty deed to Joshua E. Woodworth, the plaintiff's father, the tract of land described in the plaintiff's complaint as the one to which the right of way in question appertained, and which was now possessed by the plaintiff. The said Lydia, Parthenia and Cynthia were native members of the Mohegan tribe of Indians, and at the time were the sole owners of the tract conveyed as tenants in common. It did not appear in the trial when nor from whom they acquired their title, nor whether any right of way to the land had been granted to them or to any prior owner. The tract, at the time of the conveyance, was a part of the original Mohegan reservation. Joshua E. Woodworth died in 1850. By his will he gave the use of this land to his widow during her life, and the residue to his nine children and the children of a deceased child. The widow died in 1870, and after her death the plaintiff became by said devise and by purchase the owner of the land, and since July, 1872, has been the sole owner. A farm known as the "Fort Hill farm," which lay on the east of this tract and between it and the

highway was, at the time of the conveyance, a part of the Mohegan reservation, and was then owned by the Mohegan tribe of Indians, and had been rented by the overseer for the benefit of the tribe for more than sixty years, and to the time of its sale. In 1874, under authority of an act of the legislature, this farm was conveyed to the defendant by Thomas G. Kingsley, Nehemiah T. Adams and Rial Chaney, commissioners appointed under the provisions of the act. C. C. Symonds, who had acquired the title to a lot known as the "Ashbow lot," which lay next south of the plaintiff's land and through which a right of way was claimed to exist, being the same way that was continued on the Fort Hill farm, conveyed that lot in 1875 to the defendant, by warranty deed, containing the usual covenants against encumbrances; which deed was duly recorded, but the plaintiff had no actual knowledge that the conveyance was by warranty deed until the time of the trial. The lot in question and several lots lying north of it, had belonged to certain members of the tribe in severalty from time immemorial. The right of way claimed by the plaintiff begins at the southerly line of his tract and extends southerly across the defendant's Ashbow lot, thence southerly and afterwards easterly across the Fort Hill farm, to the highway known as the Norwich & New London turnpike. The plaintiff has always claimed this right of way since the lot came into his possession. The Wyyongs and Hoscotts were not then the owners of any other lots adjoining the plaintiff's lot across which access might be had to the highway.

Soon after Joshua E. Woodworth purchased the lot he applied to John G. Fitch, then the overseer of the tribe, to point out to him the right of way to get from the lot to the highway, and Fitch went with the plaintiff and pointed out to him the way in question as the right way. The path extended across and north of the plaintiff's land, and has always been used by the claimants of the lots lying north of his as a way to the public highway across the Fort Hill farm, but has not been used by the owners of the plaintiff's lot further north than their lot, and is not a suitable and

feasible way to the highway from the north side of the plaintiff's lot, nor was there any right of way from the plaintiff's lot to the highway across other land.

The path claimed as a right of way by the plaintiff had been used by the owners or claimants of several contiguous parcels of lands, and the owners of the land now owned by the plaintiff, under a claim of right for more than sixty years, and is the only way that the plaintiff or his ancestors had to or from their lot to the highway.

The wood was cut off the lot between 1836 and 1843, and carted over this way. Since that time wood used for firewood by the plaintiff's father and mother has been carted over this way from the lot, but since 1870 no wood has been taken from it, and no use has been made of the way by the plaintiff since 1875. The Fort Hill farm was in possession of tenants during all that period, and Joshua E. Woodworth, the plaintiff's brother, and his sister Abby Dolbeare, and her husband, William B. Dolbeare, were the tenants thereof. In the years 1870, 1871 and 1872, the path over which the plaintiff claims his right of way was plowed and cultivated, and corn and other crops grown thereon, but without the knowledge of the plaintiff. The plaintiff resides in Norwich, as did his father and mother to the time of their decease.

The defendant purchased the Fort Hill farm at public auction, and did not then know that the plaintiff owned his lot, or claimed any right of way across the farm. The plaintiff was present at the auction, and before the bidding commenced was informed by Thomas G. Kingsley, the commissioner having charge of the sale, that he should give a warranty deed of the farm; whereupon the plaintiff told Kingsley that he had a right of way across the farm to his wood lot, and that others owning wood lots had also a right of way across the farm to their wood lots. The plaintiff acted in good faith, supposing he had done what was necessary to protect his rights. Kingsley replied to the plaintiff that he should sell the farm clear of all incumbrances; that they could fight it out afterwards and settle the title. The

defendant did not hear this conversation, but after the first bid was made by him inquired publicly of the auctioneer if there were any rights of way, cart-paths, or Indian rights reserved. Whereupon the auctioneer consulted Kingsley and then informed the defendant that he should sell the farm free from all incumbrances, and give a warranty deed without any reservations. The defendant would not have accepted a quit-claim deed, but relied on a warranty deed.

The defendant claimed on the trial that the plaintiff had no rights of way across the Fort Hill farm anywhere. The plaintiff has not crossed, nor attempted to cross, nor had occasion to cross, the farm of the defendant since it was purchased by him, until a few days before the 21st day of March, 1882. Prior to this time no objection had ever been made by any one to the plaintiff or his ancestors using the way.

The plaintiff claimed a right of way by custom, by prescription, and by necessity; also judgment for the damages sustained by him by the obstruction of the way by the defendant. The defendant claimed and asked the court to rule—1. That the plaintiff was not entitled to the way claimed by him, either by custom, by prescription, or by necessity. 2. That the plaintiff was estopped from claiming a right of way across the farm as against the defendant.

The court ruled that the plaintiff had the right of way as claimed, by necessity and not by custom or prescription, across the defendant's farm, and that the plaintiff was not estopped from claiming the right of way as against the defendant; and rendered judgment for the plaintiff to recover of the defendant fifty dollars and his costs. The defendant appealed the case to this court.

*J. M. Thayer* and *C. F. Thayer*, for the appellant.

*S. Lucas* and *W. H. Jennings, Jr.*, for the appellee.

LOOMIS, J. The complaint is for obstructing a private way which the plaintiff claims to own, founded upon custom,

prescription and necessity. The court negatived the claim as to custom and prescription, but found the plaintiff entitled to a way by necessity, and rendered judgment in his favor.

It seems to us the facts found do not furnish the necessary legal elements to constitute a way of necessity. Such a way is not created by a mere necessity, but always originates in some grant or change of ownership, to which it is attached by construction as a necessary incident presumed to have been intended by the parties. The name is significant, not only for the reason just suggested, but because the way must be founded on an actual necessity, and ceases to exist when the foundation fails.

If *A* conveys land to *B* to which *B* can have access only by passing over the other land of *A*, a way of necessity passes to *B* by the grant; and if *A* conveys land to *B*, leaving the remaining land of *A* inaccessible unless by passing over the land so granted, a way of necessity is reserved to *A* in the grant. It follows therefore from the principles before stated that a way of necessity cannot legally exist where neither the party claiming the way, nor the owner of the land over which it is claimed, nor any one under whom they or either of them claim, was ever seized of both tracts of land at the same time, and the way can only be created when one of the tracts is conveyed or the ownership changed by operation of law.

The legal principles we have summarised will be found supported by numerous authorities in addition to those cited in the brief for the defendant. *Tracy* v. *Atherton*, 35 Verm., 52; *Stewart* v. *Hartman*, 46 Ind., 331; *Proctor* v. *Hodgson*, 29 Eng. L. & Eq., 453; *Pearson* v. *Spencer*, 1 Ellis (B. & S.), 571; *Gayetty* v. *Bethune*, 14 Mass., 55; *Nichols* v. *Luce*, 24 Pick., 102; *Brigham* v. *Smith*, 4 Gray, 297; 6 Wait's Actions & Defences, 355, 356; 1 Wms. Saunders, 570, note 6.

Now if we apply the law to the facts of the case under consideration we find one fundamental requisite for the creation of a way of necessity wanting, namely, a common ownership of the plaintiff's land and the defendant's land

at a time when either was conveyed. The earliest conveyance of the plaintiff's lot which the record discloses was on July 23d, 1835, when Ralph Hurlbutt, Lydia Wyyongs, Parthenia Hoscott, and Cynthia Hoscott, then the sole owners, conveyed it to Joshua E. Woodworth, the plaintiff's father, and under whom he derived title, and at that time it is found they were not the owners of any adjoining lots across which access could be had to the highway.

Similar difficulties exist in regard to previous conveyances of the defendant's land. This consists of a small lot immediately south of the plaintiff's, called the "Ashbow lot," and a large tract adjoining on the east and south of that, called the "Fort Hill farm," through both of which the way in question is claimed. The title to the former came to the defendant June 20th, 1875, by deed from one C. C. Symonds, who had no interest in the plaintiff's lot. The Fort Hill farm was conveyed to the defendant July 27th, 1874, through commissioners appointed for the purpose, from the Mohegan tribe of Indians, who owned neither the plaintiff's lot nor the Ashbow lot.

If it should be suggested that there must have been one common ownership of all these lands after they had been sequestered by the state for the use of the Mohegan tribe of Indians, we reply that a way of necessity cannot be predicated on such a fact without also showing the particulars as to the early grants—from whom and to whom made and where located; much less can it be assumed that there was any way identical with this. The tract of land called the Mohegan reservation it is said extended four miles along the river Thames and eight miles back from the river. If we could presume that there must have been some grants under circumstances implying a way of necessity, yet its location, depending upon convenience, it would be impossible to imagine, and whether its route to the nearest highway would be north, south, east or west, no one could tell. *Brice* v. *Randall*, 7 Gill & Johnson, 349.

It is not found how the grantors of the lot conveyed to the plaintiff's father derived their title. It appears only

that they were members of the Mohegan tribe of Indians, and that the lot conveyed by them and several lots lying north of it had belonged in severalty to certain members of the tribe from time immemorial. The fact that these grant-. ors were members of the Mohegan tribe, and as such joint tenants with all the other members in the Fort Hill farm, did not enable them to create a way of necessity over that farm as incident to the grant of their own land. What they could not do directly by express grant they could not do indirectly by an implied grant. *Collins* v. *Prentice*, 15 Conn., 423; *Marshall* v. *Trumbull*, 28 id., 183; *Adam* v. *Briggs Iron Co.*, 7 Cush., 368; *Watkins* v. *Peck.*, 13 N. Hamp., 360; *Portmore* v. *Bunn*, 3 Dowl. & R., 145; Washburn on Easements (2d ed.), 37, 222.

Our conclusion, that the court erred in holding that the plaintiff had a right of way of necessity, removes the sole foundation on which the court based its judgment, and would naturally end the discussion. The plaintiff however claims the benefit of the principle that if it appears from the record that the judgment was right, though the ground on which it was placed was wrong, it will not be disturbed. The principle is as stated, but does the record furnish good ground for its application? The plaintiff claims that the facts found show a good title by prescription. The duration of the occupancy would be sufficient, but as the foundation of a prescriptive title is the presumed grant from the party whose rights are adversely affected, it can only be claimed under and through some one who had a right to grant it. *Chalker* v. *Dickinson*, 1 Conn., 382; *Rochdale Canal Co.* v. *Radcliffe*, 18 Queen's Bench, 287; Washburn on Easements, (2d ed.), 112. The Indians had no such right, but their lands were under the special protection of the law. Revision of 1866, p. 523, sects. 4 & 6. Section 4 provides that "all conveyances of any land by any Indian belonging to or which have belonged to the estate of such tribe, whether by deed or otherwise, shall be void."

As the view we have taken disposes of the case upon its

merits, it becomes unnecessary to consider the question of estoppel arising from the conduct of the plaintiff at the time the defendant purchased the Fort Hill farm.

There was error in the judgment complained of, and a new trial is ordered.

In this opinion the other judges concurred.