[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for strict foreclosure wherein the plaintiff seeks possession of the subject premises, and on the second count, for money damages against the guarantor of the underlying promissory note. The parties filed stipulations of facts on the date of trial. The plaintiff claims that it is a holder of a promissory note, which it purchased, at discount, in a block purchase from the Federal Deposit Insurance Corporation, in its capacity as Receiver of Citytrust.
The stipulations concerned the dates of acquisition of the subject properties, as well as the amount of the debt outstanding, should the court find in favor of the plaintiff. The stipulation also allowed copies of the note, mortgage, and assignment to be marked as exhibits in the case. The stipulation was that the plaintiff was the "true owner and holder" of the note and mortgage at issue, and that the plaintiff took title thereto pursuant to an assignment of the FDIC, in its capacity as receiver for Citytrust.
The defendant admitted that no payments were made to CARC (Consolidated Asset Recovery Corporation) because people who were his tenants were not paying their rents and he did not have the funds to pay the notes. The defendant made contact with Mr. Briar, who negotiated with the defendants, but no agreement was made. Mr. Briar left the area, and Mr. Fowler became the account officer on this account. The defendant met with him many times at the CARC office in Bridgeport. At the time of these meetings, the defendant was not represented by counsel, and the parties talked about the note being discounted.
The IRS had a tax lien of Forty Thousand ($40,000.00) Dollars, and the Town of Washington had tax liens of over Forty Thousand ($40,000.00) Dollars. The town was threatening a foreclosure and one property was foreclosed, but his mother bought the property at the sale for $98,000.00 The appraisal for the property was $205,000.00. At the time of the foreclosure, CT Page 5284-GGGGGG CARC was paid $5,000.00 to facilitate a release of mortgage.
This property was a portion of what was sold to the plaintiffs. The affect of foreclosure was that the forced sale yeilded [yielded] thirty-five (35) cents on the dollar. The parties negotiated on that basis. He argues that CARC would yeild [yield] approximately Sixty-eight Thousand ($68,000.00) Dollars after the taxes to the IRS and the Town of Washington were paid. CARC agreed to accept Two Hundred, Twenty-five Thousand ($225,000.00) Dollars in settlement, with the second mortgage holder on a property, Mr. Axelrod, being paid Fifteen Thousand ($15,000.00) Dollars. He sold the marital home to pay the IRS and borrowed money from family members to pay the town taxes. Those sums were in fact paid. Town taxes were paid on all of the properties which are the subject of this foreclosure action.
The defendant claimed to have a tape recording of a telephone conversation with Mr. Fowler which was recorded inadvertently by the telephone answering machine. He claimed that Mr. Fowler called him, but after inquiry, the court granted the plaintiff's motion in limine, without prejudice. The defendant claimed that he agreed to pay CARC the sum of Two Hundred, Twenty-five ($225,000.00) Dollars in full and final payment of the subject note and mortgage and presented that payment on or about December 9, 1993. The defendant claims that this obligation was paid prior to the transfer of the note to the plaintiff herein. He claims that Mr. Fowler had the authority to act for CARC, that he negotiated and formulated an agreement, and that he accepted payment as agreed.
On cross-examination, the defendant agreed that he had received a letter from Mr. Fowler on or about October 8, 1993 which was marked as Defendant's Exh. 7. The letter refers to the release of four properties only, and specifically reserves the FDIC's rights in the loan and loan documents. The letter does not appear to articulate a full and final agreement as to all obligations of the parties. A letter which followed extended the time for payment until December 9, 1993, and that that letter also referred to the retention of rights of the FDIC. (Def. Exh. 8)
The defendant called Peter M. Clark, of Woodbury, who represented the defendant at the closing. He has been admitted to the practice of law since May of 1984 in the state of Connecticut. He testified that he represented the defendant in CT Page 5284-HHHHHH several real estate transactions. In late summer or early fall that he had negotiated a proposed refinance of four of the six Bee Brook properties. He prepared the documents for the sale and refinance and did so. He testified that he spoke with Ted Fowler, and received an extention of a deadline for payment. He did not have any discussions with respect to negotiating the sums to be paid under the agreement. The defendant and his mother were present at the closing. The properties were to be sold to the defendant's mother, with refinancing through People's Bank, for four porperties [properties] only. That changed within a day or so before the closing. While making final arrangements [arrangements], talking to the parties, CARC unwilling to give a release of the entire loan, but only a partial release. When he checked into this, it was confirmed to him that the agreement with CARC was not as his client, the defendant, had articulated it. Despite Mr. Clark's hesitation, the defendant was firm in consumating this transaction. It was his understanding that these four properties were the subject of a mortgage to Mr. Axelrod, whose estate was threatening to foreclose. The refinance and partial release were aimed also and primarily at satisfying that obligation. Mr. Clark testified on cross-examination that he had apprised his client that there was a risk that he would not get the other release from CARC.
The evidence is clear that the parties contemplated a sale, refinance and payment, for a partial release. CRAC [CARC] did not give releases immediately after the closing, and had to be pursured [pursued] for that purpose.
The defendant called Stephen Vaughn, who owns a mortgage company in New Haven, Connecticut, with four employees. The company brokers and underwrites mortgages, and he has worked with the defendant, Mr. Collum. He met the defendant in 1991 or 1992, in the context of refinancing the properties which were the subject of this action. He spoke with Mr. Fowler, and had known him for about eight years prior to the discussions surrounding this transaction. He discussed what would satisfy the obligation to CARC. Mr. Fowler indicated that Two Hundred, Twenty-five Thousand ($225,000.00) Dollars would settle the entire obligation of the defendant to CARC. He agreed on cross-examination that he was not present during all of the negotiations, but did conduct two conference calls with the parties during the negotiations. These calls occurred during the beginning of 1993. He was told by the defendant that the deal did go through, but with People's Bank after the defendant's mother CT Page 5284-IIIIII became involved with the deal.
The defendant called Sharon Mendelsohn, of Newtown, who has been a mortgage account officer with People's Bank for a number of years. She worked with the defendant in the fall of 1993. She did four mortgages for properties in Washington, Connecticut, the property which was originally encumbered by this loan, but which was released pursuant to the refinance. She also, as the originator of the new loan, spoke with Mr. Fowler to verify the amount of Two Hundred, Twenty-five Thousand ($225,000.00) Dollars as a total amount to discharge his debt. The witness indicated that the payment of that sum would be sufficient to complete the payment to CARC. The bank was also represented by Mr. Clark, insofar as the paperwork was concerned.
The witness agreed during cross-examination that she had seen the terms of a written agreement of settlement of claims between the defendant and CARC. However, she agreed that the letter she had seen did not disclose that the amount would satisfy all claims. Her understanding of their conversations however, were that that payment of Two Hundred, Twenty-five Thousand ($225,000.00) Dollars would conclude the entire obligation.
Theodore Fowler testified that he worked for CARC to collect the assets of Mechanics Savings Bank and Citytrust. He was a second Vice-President and workout officer. He was to collect loans in a portfolio, and did have the authority to negotiate with makers of notes. He had no authority to settle claims, however, which required committee approval. He could not remember when he first met with the defendant. He recalled a site visit to Calhoun Street, and a drive-by inspection of the Bee Brook properties, and did recall meeting with him in the Bridgeport offices. He recalls talking about a foreclosure sale of 36 Calhoun Street, but not on the Bee Brook properties. The loan was quite a bit past due, and they spoke of the possibility of his making payments, but he did not recall specifics.
He testified that they discussed a partial payment of Two Hundred, Twenty-five Thousand ($225,000.00) Dollars to release four properties. As workout officers, when one reviewed a buyout or request to compromise a claim, one would go to committee or to a senior officer. They engaged in settlements frequently, and assessed certain factors such as credit, net present value or what the value of the payment was worth today, in assessing if they could settle the loan. He could not recall the state of the CT Page 5284-JJJJJJ defendant's credit, and could recall few specifics. He carried as many as 20-30 loans at a time. He claimed that he did not know that the defendant was considering bankruptcy.
The witness testified that Defendant's Exhibit 3 was not signed by him and that he first saw it when the plaintiff's attorney showed it to him. He recalled the discussion with Mr. Collum that he would use the Nettleton Road property for a home, and that there was little if any equity in the property. The witness recalled little of his workout on this file, and left CARC in February of 1995, when CARC ceased operations after having completed its workouts of non-performing loans. He recalled talking to Ms. Mendelsohn concerning the refinance on the four properties. He recalls saying that CARC was willing to work with Mr. Collum. He recalled speaking to Mr. Vaugn [Vaughn] prior to speaking to Ms. Mendelsohn. The witness did not recall talking to Mr. Vaughn about the release of properties, or the total that might be required to be paid to discharge the entire debt.
The witness recalled a discussion with the defendant where they discussed the possibility of releasing the properties for the payment of the specific sum of Two Hundred, Twenty-five Thousand ($225,000.00) Dollars. He recalled that the defendant came to his door at his home and that he specifically asked him to leave. He put his foot in the door and both he and his wife tried to shut the door while the defendant's foot and part of his leg were in the door. He denied forcefully having had any conversation with the defendant that there was an agreement to settle this case in full for Two Hundred, Twenty-five Thousand ($225,000.00) Dollars.
On cross-examination of the witness by plaintiff, the witness agreed that after the closing on or about December 9, 1993, he continued to negotiate with the defendant on the remaining three pieces of property. (Pl. Exh. 10) The witness testified that the defendant took a piece-meal approach to settling his debt with CARC. He first compromised on Calhoun Street, then when the Axelrod claim arose, the four pieces which were the subject of the Two Hundred, Twenty-five Thousand ($225,000.00) Dollar payment. The witness was not vested with the authority to compromise this loan without the approval of committee.
The witness indicated that the defendant met with a team leader and verbally suggested that CARC would take a small amount CT Page 5284-KKKKKK of cash, and that he would assign a note he held by him so that CARC could pursue that debt. Mr. Fowler's testimony was clearly credible, and the court finds from all of the documentary evidence surrounding the closing of the four properties, that the payment by the defendant of Two Hundred, Twenty-five Thousand ($225,000.00) Dollars was not in full and final satisfaction of the underlying note and mortgage which is the subject of this foreclosure action.
The court also finds that the witness, Mr. Fowler, was not authorized to bind CARC to a settlement of this claim, but rather finds that that would have only resulted from a committee agreement to settle, which agreement with the defendant would necessarily have been communicated to him in writing. The defendant's own attorney understood this, and advised the defendant against closing on the four properties, without a written assurance from CARC as to his client's claimed understanding of the settlement. The court is not convinced that there had ever been such a negotiation, or proposition, other that a discussion that that settlement would be taken to committee for their decision.
Of significance in this finding is the court's assessment of the defendant's testimony in its entirety, as well as his profer [proffer] of an exhibit which purports to be a release of all obligations, allegedly signed by Mr. Fowler. During his testimony, Mr. Fowler denied that it was his signature. The court was struck by the lack of formality of the instrument, the lack of use of letterhead, and the date of the purported instrument, which bore no relationship to any other organized transaction between the parties. It is clear to the court that the defendant attempted to influence the opinion of the court by this suspect document. While there is no forensic evaluation of the instrument as to its authenticity or who was responsible for its creation, the document clearly is not what it purports to be, and adds to the court's finding that the testimony of the defendant, in its entirety, is not worthy of belief.
The defendant has failed to meet his burden on all of his Special Defenses, and as a matter of fact, the court finds in favor of the plaintiff on those issues.
The defendant claims that the plaintiff cannot challenge the legal sufficiency of the special defenses because the plaintiff failed to file a motion to strike. The reasoning of the defendant CT Page 5284-LLLLLL is lacking. The rule is discretionary, not mandatory. Sears v.Hickey, 186 Conn. 337, 344-347 (1982); Farricielli v. PersonnelAppeal Board, 186 Conn. 198, 203 (1982). In light of the court's findings of fact, the legal sufficiency of the claims are of small note.
The defendant claims that the plaintiff is not a holder in due course. He claims that Conn. Gen. Stat. Sec. 42a-3-302
defines a holder in due course as a holder who took the instrument for vaule [value] and in good faith and in pertinent part . . . "(iii)without notice that the instrument is overdue or has been, dishonored . . ." The defendant claims that the plaintiff, in Requests for Admissions filed on October 5, 1995, the plaintiff admitted that when it acquired the subject note and mortgage, it had knowledge that the note had been dishonored. Further, he argues that the date on the face of the note had passed by August of 1994 when it was acquired by the plaintiff.
The plaintiff argues that the status of holder in due course emanates from the status which Citytrust had in this instrument. It is clear from the evidence and stipulation that Citytrust was a holder in due course, and the the rights in that instrument were vested in the FDIC as Receiver. The rights possessed by the FDIC in that negotiable instrument pass to the transferor's successor in interest, in this case, the plaintiff. CheshireCommercial Corporation v. Philip Messier, 6 Conn. Cir. 542, 545, 275 A.2d 413 (1971); Federal Deposit Insurance Corporation v.Newhart, 10 UCC Reporting Service 2d (1989), and Conn. Gen. Stat. Sec. 42a-3-201(1). The plaintiff is a holder in due course, and would be immune from any defenses. The court has found that those defenses have not been proved factually, and articulates that alternatively, there is no legal basis on which to make those claims.
The defendant claims that Fowler acted with apparent authority for CARC, and that his statements of settlement should be sufficient to bind the plaintiff. The plaintiff counters that the statements are inadmissible hearsay, and cannot form a basis for a finding of fact as to agency, binding the FDIC, and thereby allowing a defense to this note and mortgage. The court has made findings with respect to the credibility of the witnesses, and has further found that there was not proved the requisite authority, actual or apparent in this case. The court agrees with the assertion of defendant that the issue of apparent CT Page 5284-MMMMMM authority is one of fact to be determined by the court on two criteria. First, the court must find from the evidence from the principal's conduct that "the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority." Hollywyle Association, Inc. v. Hollister,164 Conn. 389, 396 (1973). Secondly, and in this action, most importantly, the party dealing with the agent must have, "acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority" to bind the principal.
This court will not find that the defendant acted in good faith in his stated belief that Mr. Fowler could bind the FDIC. He had been to a closing of a partial refinance package concerning four parcels which were the subject of this mortgage, was represented by counsel, and when advised by his counsel that this was not a total settlement of all claims, went forward anyway. The credible evidence is consistent that the defendant knew what he was paying Two Hundred, Twenty-five Thousand ($225,000.00) Dollars for, and it was not payment in full. He also was aware of the need for committee approval. Mr. Fowler's testimony concerning his own authority in this and his other cases was credible. The defendant failed to prove actual or apparent authority to bind the principal.
The defendant next claims that the FDIC, through CARC, ratified the contract between the agent and the defendant by accepting and retaining the proceeds of the closing, knowing what the claim was. There was not contract between Fowler and the defendant to be ratified, and the claim was nothing more than wishful thinking, at best, or an attempt to defraud, at worst.
The defendant claims accord and satisfaction, in that he had an agreement to pay a new sum to satisfy the underlying note. He claims that their negotiations rendered the amount due on the note "disputed." The court disagrees with this argument. The sum was a liquidated sum, for which a stipulation has been filed with this court. The court has found that there was no agreement for settlement, so that the defendant cannot rely on his partial payment as payment in full.
The defendant claims equitable estoppel. Any claimed injury by the defendant predicated on his decision to close for a partial release is not sufficient to raise this issue. The defendant was warned not to close based on a false assumption CT Page 5284-NNNNNN that this would take care of the entire debt, and moreover, any contemplated bankruptcy could have been filed after the decision was made by him not to close without written verification of the total release. The defendant, again, lacks credibiltiy [credibility] on this issue, and the court, on that basis would not invoke equitable relief.
Based upon the foregoing, the court orders that on the First Count, a Judgment of Strict Foreclosure enter with a law date of September 9, 1996. The court will reserve decision for a later date the claims of deficiency judgment, possession, costs and attorneys' fees, appointment of a Receiver of Rents, and any other relief that might be appropriate.
On the Second Count, the court finds the issue for the plaintiff, and finds damages to be principal and interest on the underlying note in the total amount of Three Hundred Thousand, Eight Hundred, Thirty-one and 03/100 ($300,831.03) Dollars, plus costs and a reasonable attorneys' fees pursuant to the terms of the note, on which the court will reserve decision.
DRANGINIS, J.