[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs Roger J. Strollo, Joyce Strollo and Suzanne L. Costa have claimed an easement by necessity,[1] through their predecessor in title Susanne A. Strollo, to pass over land presently owned by the defendant Julie M. Solla in which the defendants Marie T. Iannantuoni and Nicholas V. Iannantuoni own a possessory interest for life use and occupancy. The plaintiffs seek legal and equitable relief.
I. Facts
The court finds the following facts:
1. On May 18, 1945, Walter Lecuyer and Lucy Lecuyer conveyed to Arnold Nigro and Julia Nigro 27 acres of land in Cheshire, Connecticut bounded "Northerly — by the Old Highway, Bird Lane, so-called and land now or formerly of John Altobello, et al., Trustees (Meriden Coon Club), each in part; Easterly — by the Highway; Southerly — by land now or formerly of S. A. Hale; and Westerly — by land now or formerly of Joseph P. Moss and Mary L. Williams and land now or formerly of John Altobello, et al., Trustees (Meriden Coon Club), each in part" (Exhibit A).
2. The defendant Marie Iannantuoni lived on the property with her parents and became an owner in 1960.
3. The defendant Marie Iannantuoni is the plaintiffs' aunt and the Nigros were their grandparents.
4. The Nigros and others, including tenants, farmed the property and had cows.
5. On May 21, 1960, Arnold Nigro and Julia Nigro conveyed to CT Page 7528 Marie T. Iannantuoni a portion of their property described as bounded by: "Northerly — 400 feet on Bird Lane, so called; Easterly — 837.88 feet on Marion Road; Southerly — 475 feet on land now or formerly of S.A. Hale; Westerly — 772.15 feet on other land of the grantors. Being part of the same premises conveyed to Arnold Nigro and Julia Nigro by Walter Lecuyer and Lucy Lecuyer by deed dated May 15, 1944" (exhibit B). On June 1, 1970, Marie conveyed this property to herself and her husband the defendant Nicholas V. Iannantuoni by way of a quit claim-survivorship deed (exhibit H). Iannantuoni's property is parcel 1 on exhibits J, I and S, property maps of the Town of Cheshire.
6. Also on May 21, 1960, Arnold Nigro and Julia Nigro conveyed to Susanne A. Strollo a portion of their property described as bounded: "Northerly — by the Old Highway, Bird Lane, so-called and land now or formerly of John Altobello, et al., Trustees (Meriden Coon Club), each in part; Easterly — by land this day deed to Marie T. Iannantuoni by the grantors herein; Southerly — by land now or formerly of S. A. Hale; Westerly — by land now or formerly of Joseph P. Moss and Mary L. Williams and land now or formerly of John Altobello, et al., Trustees (Meriden Coon Club, each in part. Being part of the same premises conveyed to Arnold Club, each in part. Being part of the same premises conveyed to Arnold Nigro and Julia Nigro by Walter Lecuyer and Lucy Lecuyer by deed dated May 15, 1944" (exhibit C). On March 1, 1978, Susanne conveyed this property to herself and her husband Theodore Strollo by way of a quit claim-survivorship deed (exhibit D). Strollo's property included parcels 7, 9 and 10 as shown on exhibits I and S.
7. On October 18, 1978, the Strollos conveyed 2 acres of their property, parcel 10 on exhibits I and S, to Roger Strollo and Joyce Strollo (exhibit E). The property is described as bounded: "Northerly — by Bird Lane; Easterly — by land now or formerly of Nicholas V. and Marie T. Iannantuoni; Southerly — by land now or formerly of Theodore Strollo; Westerly — by land now or formerly of Theodore Strollo."
8. By way of a deed dated December 22, 1990, but not recorded until July 1, 1991, (exhibit F) Theodore Strollo and Susanne A. Strollo conveyed to Theodore R. Strollo, Suzanne L. Costa and Roger J. Strollo property described as bounded: "NORTHERLY by the highway, Bird Lane; EASTERLY by land now or formerly of Marie T. Iannantuoni; SOUTHERLY by land now or formerly of S.A. Hale; CT Page 7529 WESTERLY by land formerly of Joseph P. Moss and Mary L. Williams, more lately of Jennie McLelland and the State of Connecticut; EASTERLY by land now or formerly of Denise Reardon Tice; NORTHERLY by land now or formerly of Denise Reardon Tice; WESTERLY by land now or formerly of Denise Reardon Tice; Being the same premises mentioned and described in a certain Warranty Deed from Arnold Nigro and Julia Nigro to Susanne A. Strollo dated May 21, 1960; And being the same premises as described in a quit claim survivorship deed in volume 311, page 274 of the Cheshire Land Records [see exhibit D]." Theodore R. Strollo quit-claimed his interest in this property to Roger J. Strollo and Susanne L. Costa by way of a deed dated February 6, 1994 (exhibit G). As described by deed, this property includes parcels 7 and 9 as shown on exhibits I and S.
9. Parcels 1, 9 and 10 all abut what is known as Bird Lane on their northerly boundaries. Parcel 7 abuts Bird Lane along a portion of one of its northerly boundaries. (See Appendix A to this opinion.)
10. Bird Lane provides a way of ingress and egress to Marion Road, a public road to the east of parcel 1. Bird Lane is approximately ten feet wide. Bird Lane is not now a public road and it could not be determined whether Bird Lane ever was a public road. No one knows who owns Bird Lane. Neither the plaintiffs nor the defendants have record title to Bird Lane. There are other parcels abutting Bird Lane but no owner on Bird has a better right to it than any other according to Robert V. Noel, a title searcher. The other owners, their tenants and the Coon Club have all used Bird Lane.
11. Roger Strollo testified that he thought he had a right of access on Bird Lane and that since 1960 his parents (the Strollos) and their tenants used Bird Lane to access their property and would only use Iannantuoni's property when someone else was using Bird Lane because two vehicles cannot pass on Bird Lane.
12. When the property was a unified parcel, the Nigros farmed the land. When Susanne Strollo owned the property, she rented out the property and had it farmed. The plaintiff Roger Strollo has stripped some of the land to remove gravel for farming and planted several hundred blue spruce. The property has also been used by hunters and for motorcycle riding.
II. Discussion
CT Page 7530
In Connecticut, an easement by necessity is distinguished from other implied easements.[2] Compare HollywyleAssociation, Inc. v. Hollister, 164 Conn. 389, 398-99,324 A.2d 247 (1973) with D'Amato v. Weiss, 141 Conn. 713,716-18, 109 A.2d 586 (1954). An easement by necessity does not require a pre-existing use of the right of way claimed, but is premised on the legal fiction that the dividing grant includes such a right of way if the severance otherwise would create an inaccessible parcel. Collins v. Prentice, 15 Conn. 38
(1842). Moreover, a right of way by necessity is not a permanent right nor is it a permanent way attached to the land and it cannot be conveyed by deed. Pierce v. Selleck,18 Conn. 321, 328 (1847). Necessity must not only arise at the time of the original division of the property; there also must be a present necessity for the easement. See id.; 25 Am.Jur.2d Easements § 41, p. 611 (1996). The elements of easement by necessity are: (1) original unity of title; (2) severance of the original property creating an inaccessible parcel; and (3) reasonable necessity.
(A) Unity of Title
There is no dispute that the plaintiffs and the defendants derive title from a common grantor. On May 18, 1945, Walter Lecuyer and Lucy Lecuyer conveyed a parcel of approximately 27 acres in Cheshire, Connecticut to Arnold Nigro and Julia Nigro. (Exhibit A). On May 21, 1960, the Nigros conveyed a portion of the Lecuyer land to Marie T. Iannantuoni (exhibit B), one of the defendants, and another portion to Susanne A. Strollo (exhibit C), the plaintiffs' predecessor in title. (Exhibits D, E, F, G). Accordingly, the plaintiffs have established original unity of title by a fair preponderance of the evidence.
(B) Severance Creating an Inaccessible Parcel
The law will impose an easement by necessity over adjoining property when a conveyance severing an original unified parcel creates an inaccessible parcel. The access over adjoining property is "incident to the grant; for without it, [the grantee] cannot derive any benefit from the grant." Collins v.Prentice, supra, 15 at 43.
 The basis of this right [of necessity], if it exists, is the presumption of a grant or reservation arising from the CT Page 7531 circumstances of the case. . . . Although called a way of necessity, the necessity does not create the way but merely furnishes evidence as to the real intention of the parties. . . . Such a way is, therefore, not created by mere necessity; it always originates in some grant or change in ownership to which it is attached by construction a necessary incident, presumed to have been intended by the parties. . . . A way of necessity is dependent upon unity of ownership or title, followed by a severance thereof. (Emphasis supplied; internal citations omitted.) Leonard v. Bailwitz, 148 Conn. 8, 11, 166 A.2d 451
(1960).
"Since an easement by necessity arises simultaneously with the severing conveyance and because of the circumstances then existing, it may not arise from circumstances occurring subsequent to the conveyance." 28A C.J.S. Easements § 91, p. 272 (1996). In this case, the court must look to the circumstances existing at the time of the 1960 severance of the Nigro property to determine whether the Nigros conveyed an inaccessible parcel to the plaintiffs' predecessor in title. Thus, evidence concerning the present claims of Buck, who has owned parcel 5 since 1967,[3] and other abutting landowners is irrelevant to the court's determination. See Leonard v.Bailwitz, supra, 148 Conn. at 14. There is scant evidence of the circumstances existing in 1960.[4]
From the evidence that was presented and the reasonable inferences that the court has drawn from it, the court concludes that at the time of the severance of the Nigro property, parcels 7, 9 and 10 had access to Marion Road by way of Bird Lane. The deed describes the northerly boundary of these parcels lo include the "Old Highway — Bird Lane, so-called." (exhibit C) Bird Lane provided a way of ingress and egress to Marlon Road for all the parcels appurtenant to it. That the Strollos and their successors have used Bird Lane to get to and from their property since 1960 confirms the court's conclusion as to the circumstances existing in 1960. Accordingly, the plaintiffs have failed to persuade the court by a fair preponderance of the evidence that in 1960 the Nigros conveyed an inaccessible parcel to Susanne A. Strollo.
(C) Reasonable Necessity
Although the court has concluded that the plaintiffs have CT Page 7532 failed to meet their burden of proving their parcel was inaccessible at the time of severance of the Nigro property, an alternative argument is suggested by the pleadings and the briefs that there is a reasonable necessity for the claimed easement because the plaintiffs are unable to obtain the most beneficial enjoyment of their property. While only reasonable, rather than absolute, necessity for a right of way is required, "the element of necessity has been rather strictly construed and made to depend on the situation of both parties, the nature and adaptability of the property and surrounding circumstances."Hollywyle Association, Inc. v. Hollister, supra,164 Conn. at 401.
Relying on Myers v. Dunn, 49 Conn. 71, 78 (1881), and Marshall v. Martin, 107 Conn. 32, 37, 139 A. 348
(1927), the plaintiffs' position appears to be that even if they have access to their property over Bird Lane it is inadequate for full beneficial use of the land due to Bird's width and for other reasons. There is some merit to this argument. Easements by necessity "are the product of situations where the usefulness of land is at stake. The scope of the resultant easement embodies the best judgment of the court as to what is reasonably essential to the land's use. The conduct of the parties is important in furnishing a `practical construction' of . . . the necessity." 4 Powell on Real Property, § 34-13, p. 34-196 (1998).
The plaintiffs claim they "cannot put the property to any use whatsoever." (Plaintiffs' Trial Brief, p. 19). That claim is belied by the evidence. Roger Strollo testified that the property has been farmed as long as he can remember. When the property was a unified parcel, the Nigros farmed the land. When Susanne Strollo owned the property, she rented out the property, and had it farmed. Since he has been owner, Roger Strollo stripped some of the land to remove gravel for farming and planted several hundred blue spruce. Further, Roger Strollo testified that the property was used by hunters and for motorcycle riding.
The plaintiffs claim, however, that they are unable to construct a house on the land. Although Roger Strollo testified that he was unsuccessful in obtaining a building permit when the 2 acre parcel (lot 10 on exhibit S) was transferred to him in 1978, there is no evidence that either he or the other plaintiffs presently seeks to erect a single-family dwelling on the property. Rather, Roger Strollo testified that he would like to put a subdivision on his property and requires a 50' wide CT Page 7533 easement to do so. The court does not agree, however, that it is reasonably essential to the plaintiffs' use of their property to impose an easement of necessity that is 50' wide on the defendants' property simply to accommodate the plaintiffs' desire to profit from a potential subdivision. Moreover, the creation of such a right of way would work a serious inequity on the defendants.
In considering the surrounding circumstances, the nature of the land and the conduct of the parties, and in balancing the equities present in this case, the court concludes there is a reasonable necessity for a right of way over the defendants' land to accommodate the farming and recreational activities for which this land seems eminently suited. The court will order an easement by necessity in accordance with this conclusion.
III. Easement by Necessity
The court has reviewed the photographs and the property maps submitted into evidence in order to determine the precise location, limit and route of the easement by necessity ordered by this decision. Hollywyle Association, Inc. v.Hollister, supra, 164 Conn. at 402.
It is therefore ordered that: There shall be an easement by necessity located on the northerly border of defendants' property, which is shown as parcel 1 in exhibit I and S, and directly adjacent to the southerly border of Bird Lane, 20' in width and extending westerly 400' from Marion Road to the easterly border of the plaintiffs' property, which is shown as parcel 10 in exhibits I and S. The plaintiffs shall bear the burden of creating and maintaining this right of way. The purpose of this easement is to provide beneficial use of the land for farming and recreational activities, as permitted by the zoning laws of the Town of Cheshire. It is subject to the common law regarding continuing necessity.
IV. Conclusion
Judgment shall enter in favor of the plaintiffs as indicated in section III above. The request for injunctive relief is denied.
Linda K. Lager Judge of the Superior Court CT Page 7534
[EDITORS' NOTE: IMAGE IS ELECTRONICALLY NON-TRANSFERRABLE.]